IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| ROBERT WALL and<br>LINDA WALL | : CIVIL ACTION |
|---|---|
| v. | : NO. 16-1044 |
| CORONA CAPITAL, LLC, *et al.* | : |

**KEARNEY, J.**                                                                                November 22, 2016

## MEMORANDUM

Courts may only exercise personal jurisdiction consistent with the due process clause and retain venue where appropriate. These bedrock principles are now tested in the evolving investment business of buying an injured plaintiff's settlement consisting of structured annuity payments and then brokering the annuity's income stream to investors. As a caution to those investing in these sold annuities, a court can later vacate the sale of the annuity payments when the underlying plaintiff selling his annuity payments lacked authority to sell his settlement consideration, leaving the eventual investors without the purchased asset. Today, we evaluate jurisdiction and venue over a Florida defendant buying the annuity payments from a non-party Floridian plaintiff. The Florida defendant then sold the annuity payments to a New Jersey defendant who, in turn, sold the annuity payments to two Pennsylvanian investors under a pre-existing agreement. In the accompanying Order, we grant the Florida defendant's motion to dismiss as we lack general and specific personal jurisdiction over it. We retain specific personal jurisdiction over the New Jersey defendant who sold the annuity payments to the Pennsylvanian investors even though their agreement included a permissive forum selection clause suggesting a Monmouth County, New Jersey state court venue.

## I. Background

With the aid of their Pennsylvania financial advisor, Pennsylvanians Robert and Linda Wall purchased a structured annuity payment under a master agreement they signed with Altium Group LLC, a Delaware limited liability company doing business in New Jersey.[1] Altium connects Corona Capital, LLC with potential purchasers or investors for annuity payments. Corona Capital is a Delaware limited liability company with its principal place of business in Florida purchasing structured annuity payments at a discount from injured individuals who settled personal injury claims.

Altium sold the idea of investing in structured settlement payments to the Walls on November 8, 2011 under a Master Agreement[2] providing, "[i]n the event of a dispute concerning this agreement, the parties agree that venue lies in a court of competent jurisdiction in Monmouth County, New Jersey."[3] Corona Capital arranged for the purchase and transfer of Kenneth Stevens' structured settlement payment rights, payable under an annuity issued by New York Life Insurance in Florida. Corona Capital sold the right, title, and interest payments to Mr. Stevens' annuity to Altium on March 15, 2012.[4]

A Florida state court granted Corona Capital's petition to approve the transfer on March 28, 2012 entitling the Walls to receive 60 payments of $3,000 with 3% annual increase in payments beginning on June 1, 2014, and ending with the last payment on May 1, 2019.[5] Over two years later, the same state court vacated its March 28, 2012 Order and ordered New York Life Insurance to make the structured settlement payments to Stevens' attorneys and not to the Walls.[6]

The Walls paid $152,833.37 to Altium under the Master Agreement but never received payments from Altium or Corona Capital.[7] The Walls sued alleging breach of transfer of

2

warranties, breach of contract, and unjust enrichment against Corona Capital and Altium and a negligence claim against Corona Capital.

Corona Capital moves to dismiss for lack of personal jurisdiction or to transfer venue. Altium moves to dismiss based on *forum non conveniens*.

## II. Analysis

### A. We cannot exercise personal jurisdiction over Corona Capital.

The Walls allege we have personal jurisdiction over Corona Capital because: (1) Corona Capital had "their agent" Altium offer the structured annuity to the Walls' Pennsylvania financial advisor; (2) Corona Capital petitioned a Florida state court to transfer annuity payments to the Walls in Pennsylvania; (3) Corona Capital referred to the Walls as their "designated assignee" in a letter to New York Life; and, (4) Corona Capital regularly conducts business with Pennsylvania residents. We do not give consideration to the Walls' first and fourth conclusions unsupported by facts of an agency relationship or Corona Capital's other business relationships in Pennsylvania.[8]

We examine our exercise of personal jurisdiction over Corona Capital under the Due Process Clause and Pennsylvania's Long Arm Statute. First, we analyze if Corona Capital had minimum contacts with Pennsylvania to "reasonably anticipate being haled into court there."[9] If Corona Capital has minimum contacts, we determine if our exercise of personal jurisdiction would comport with "traditional notions of fair play and substantial justice."[10]

The Walls argue Corona Capital has minimum contacts with Pennsylvania because it intended the Walls to be third-party beneficiaries to the structured settlement petition and directed New York Life to send payments to the Walls in Pennsylvania over the next five years. Corona Capital and the Walls never signed a contract. Even assuming we stretched the facts to

3

hypothetically find the Walls and Corona Capital signed a contract, "[a] contract alone does not 'automatically establish sufficient minimum contacts in the in the other party's home forum." There must be evidence "the defendant 'purposefully availed [itself] of the privilege of conducting activities within the forum' thus invoking the benefits and protections of the forums state's laws."[11]

In *Rotondo Weinreich Enterprises, Inc. v. Rock City Mechanical, Inc.*, the district court evaluated the defendant's contacts with Pennsylvania in a breach of contract case.[12] Defendant's contacts included negotiations with a Pennsylvania plaintiff by email, phone, and mail, the parties intended to enter into an approximate one year contract, and performance occurred outside Pennsylvania except plaintiff's compensation flowing back to Pennsylvania.[13] The district court found these limited contacts were not "sufficient . . . with the forum state to grant...personal jurisdiction."[14]

The Walls do not allege Corona Capital negotiated with them while they were in Pennsylvania or Corona Capital entered into a contract with them. The Walls do not allege Corona Capital ever contacted the Walls or anyone in Pennsylvania. The Walls signed a contract with Altium, not Corona Capital. Corona Capital's sole contact with Pennsylvania is it petitioned and obtained a Florida court order directing New York Life (by a letter from Florida) to send payments to the Walls in Pennsylvania based on the Master Agreement between Altium and the Walls.

Even assuming Walls have third-party beneficiary status under the Corona Capital and Kenneth Stevens' agreement, we still do not have minimum contacts sufficient to satisfy "traditional notions of fair play and substantial justice."[15] The Walls do not allege Corona Capital had direct contact with them or Pennsylvania in creating the transaction. There is no

4

allegation Corona Capital had any direct contact with Pennsylvania. Mere knowledge of a Pennsylvanian possibly benefiting from a contract between a Floridian and a New Jersey citizen does not create personal jurisdiction over the Floridian.

In finding we lack personal jurisdiction over Corona Capital, we are persuaded by the court's reasoning in *Rhodes Enterprises, LLC v. Financial Carrier Services, Inc.* where a Tennessee company Rhodes sued two defendants, FCS, a Florida corporation, and RW Trucking, an Alabama business.[16] Rhodes alleged FCS and RW Trucking agreed for FCS to pay RW Trucking for their freight hauling services in exchange for a commission, FCS then collected payments from customers receiving RW Trucking's services, and then RW Trucking billed FCS and FCS pays RW Trucking.[17] Rhodes entered into an oral sub-contractor agreement with RW Trucking to perform freight hauling services.[18] Through the agreement between FCS and RW Trucking, FCS paid Rhodes $90,000 for freight hauling services as RW Trucking's subcontractor.[19] At some point, the payments stopped. Rhodes sued in its home venue Tennessee for breach of contract against FCS and RW Trucking.[20] Floridian FCS challenged personal jurisdiction.[21] Rhodes argued FCS had minimum contacts because it was a third-party beneficiary to the FCS and RW Trucking agreement and FCS sent payment to Rhodes in Tennessee.[22] The court found "the mailing of income to a party in a forum state alone is insufficient to confer specific jurisdiction."[23] The court noted, even if Rhodes is considered a third-party beneficiary, he could not have alleged the agreement "executed by parties foreign to Tennessee without any involvement of Tennessee whatsoever - sufficient to establish minimum contacts that would make the exercise of jurisdiction comport with traditional notions of fair play and substantial justice."[24]

We cannot exercise personal jurisdiction over Corona Capital because it does not have minimum contacts with Pennsylvania. The Walls' breach of transfer of warranties, breach of contract, negligence, and unjust enrichment claims against Corona Capital are dismissed.

### B. Venue for the Walls' claims against Altium is proper.

Venue is proper under 28 U.S.C. § 1391(b)(2), ("a substantial part of the events or omissions giving rise to the claim occurred,") because Altium reached out to the Walls' financial advisor in Pennsylvania to market the annuity product[25], the Walls wrote the check and paid for the annuity from a Pennsylvania bank account,[26] and Altium inflicted harm on the Walls in Pennsylvania.[27]

The Master Agreement between the Walls and Altium governs their relationship.[28] "In determining proper venue for a contractual dispute, the primary factors to be considered are 'where the contract was to be negotiated or executed, where the contract was to be performed, and where the alleged breach occurred.'"[29] Altium communicated to the Walls' financial advisor and the Walls in Pennsylvania, the Walls paid their consideration for the contract from Pennsylvania, and Defendants agreed to send payments to Pennsylvania.[30] While the alleged breach occurred in Florida, we find venue proper because a "substantial part of the events" giving rise to the claim occurred here.[31]

### C. We decline to transfer venue under § 1404.

Altium moves to transfer venue to Monmouth County, New Jersey under the Master Agreement's forum selection clause. The Walls argue while they agreed venue is proper in Monmouth County, New Jersey, the parties did not require venue in Monmouth County.

"Forum selection clauses can be mandatory or permissive."[32] A mandatory forum selection clause provides venue is proper only in the identified forum.[33] A permissive forum

selection clause authorizes venue in the selected forum. Courts give less weight to permissive forum selection clauses because these clauses do not exclusively limit the forum.[34]

The Walls' forum selection clause provides "[i]n the event of a dispute concerning this agreement, the parties agree that venue lies in a court of competent jurisdiction in Monmouth County, New Jersey."[35] The parties authorized venue in Monmouth County, New Jersey over contract disputes but the clause does not exclusively limit the forum.[36] The parties agreed to a permissive venue selection clause.[37]

The parties authorized venue in Monmouth County, New Jersey. No District Court sits in Monmouth County. Our Court of Appeals instructs where a forum selection clause provides venue in a county without a situate District Court, the plaintiff could not bring suit in the District even though the selected county is within its territorial jurisdiction.[38]

As we find a permissive forum selection clause, we apply *Atlantic Marine* and the balancing test of § 1404(a), as identical to the balancing test for *forum non conveniens*.[39]

### A. Private interest factors weigh against transfer.

Our analysis begins with the private interest factors: "(1) plaintiffs' forum preference as manifested in the original choice; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses-but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)."[40]

The Walls prefer to litigate here.[41] The breach occurred in Florida where Mr. Stevens' wife forged the agreement and the state court vacated the settlement structure payments to the

Walls. Altium offered the deal to the Walls in Pennsylvania, the Walls signed a check for the investment in Pennsylvania, and they suffered harm in Pennsylvania.

The convenience of the parties weighs against transfer. Altium is located in New Jersey and showed a willingness to reach out to Pennsylvania by contacting the Walls' financial advisor with the offer. Because under *Atlantic Marine*, "a successful motion under *forum non conveniens* requires dismissal of the case" and we cannot transfer this case to a New Jersey state court, our only alternative is a "hars[h] result": dismiss the case requiring the Walls to file a new complaint in New Jersey state court against the defendant over whom we already have jurisdiction.[42] We decline to do so.

### B. Public interest factors weigh against transfer.

We also review the public interest factors: "(1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases."[43]

We find most public interest factors are neutral. We can enforce a judgment. Altium can litigate in this District where it solicits investors. We have no basis to find a New Jersey state court is less busy than this Court. We have a local interest in protecting Pennsylvania residents from the sometimes "unscrupulous" activities surrounding structured settlements.[44] We are familiar with governing New Jersey law and we share the same Court of Appeals.

The public interest factors weigh in favor of retaining venue.

### III. Conclusion

We dismiss all claims against Corona Capital as we lack personal jurisdiction over it. We do not dismiss or transfer the Walls' claims against Altium because the venue selection clause is permissive and the *Jumara* factors weigh against transfer.

---

[1] ECF Doc. No. 22 ¶ 5-7.

[2] *See* ECF Doc. No. 27-1, Master Structured Settlement Receivable Purchase and Sale Agreement and Non-Circumvention Agreement ("Master Agreement").

[3] ECF Doc. No. 22-1 at 13.

[4] *See* ECF Doc. No. 29-2, Structured Settlement Receivable Purchase and Sale Agreement ("Sale Agreement").

[5] ECF Doc. No. 22-1 at 2, 5.

[6] ECF Doc. No.22-1 at 8.

[7] ECF Doc. No. 22 ¶ 18.

[8] *See Corporate Air, LLC v. Davis*, No. 13-729, 2013 WL 6858978 at *3 (W.D.Pa. Dec. 30, 2013). Plaintiff did not ask for jurisdictional discovery as to any agency or evidence suggesting general jurisdiction.

[9] *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

[10] *International Shoe. Co. v. Washington*, 326 U.S. 310, 316 (1945).

[11] *Hufnagel v. Ciamacco*, 281 F.R.D. 238, 246 (W.D.Pa. 2012)

¹² *Rotondo Weinreich Enterprises, Inc. v. Rock City Mechanical, Inc.*, No. 04-5285, 2005 WL 119571 at *4-5 (E.D.Pa. Jan. 19, 2005).

¹³ *Id.* at *4-6.

¹⁴ *Id.* at *7.

¹⁵ *Id.*

¹⁶ *Rhodes Enterprises, LLC v. Financial Carrier Services, Inc.*, No. 14-1723, 2014 WL 7010952 at *1 (M.D.Tenn. Dec. 11, 2014).

¹⁷ *Id.* n.1.

¹⁸ *Id.* at 1.

¹⁹ *Id.* at 5.

²⁰ *Id.* at 1.

²¹ *Id.* at 1.

²² *Id.* at 4.

²³ *Id.* at 5.

²⁴ *Id.* at n.5 (citing *Int'l Shoe Co.*, 326 U.S. at 315).

²⁵ ECF Doc. No. 22 ¶ 11.

²⁶ *Id.* ¶ 7.

²⁷ *Id.*

²⁸ William C. Coluccio's Declaration, ECF Doc. No. 25. *Leone v. Cataldo*, 574 F. Supp. 2d 471, 483 (2008)(internal citations omitted)(When deciding a Rule 12(b)(3) motion we "must accept as true the allegations in the complaint, although the parties may submit affidavits in support of their positions.").

²⁹ *Whipstock Natural Gas Services, LLC v. Trans Energy, Inc.*, No. 08-1084, 2008 WL 4287158 at *3 (W.D.Pa. Sept. 17, 2008)(*quoting Cottsman Transmission Sys., Inc. v. Martino*, 36 F. 3d 291, 294 (3d Cir. 1994).

³⁰ ECF Doc. No. 22 ¶¶ 7, 11, 13.

[31] 28 U.S.C. § 1391.

[32] *Campanini v. Studsvik, Inc.*, No. 08-5910, 2009 WL 926975, at *4 (E.D. Pa. Apr. 6, 2009).

[33] *Id.*

[34] *Id.*

[35] ECF Doc. No. 25-1.

[36] *ADP, LLC v. Bakshi*, No. 15-8385, 2016 WL 1223557, at *3 (D.N.J. Mar. 29, 2016)( a forum selection clause is permissive: "I agree that any action by me to challenge the enforceability of this Agreement must be brought or litigated exclusively in the appropriate state or federal court located in the State of New Jersey. I also agree that any action by ADP to enforce this Agreement, as well as any related disputes or litigation related to this Agreement, may, but do not have to, be brought in the appropriate state or federal court located in the State of New Jersey.").

[37] Because the venue selection clause is permissive, we do not modify the § 1404(a) balancing test for under *Atlantic Marine Const. Co. v. U.S. Dist. Court for Western Dist. of Texas*, __ U.S.__, 134 S.Ct. 568, 580 (2013); *see also Networld Commc'ns, Corp. v. Croatia Airlines, D.D.*, No. 13-4770, 2014 WL 4724625, at *2 (D.N.J. Sept. 23, 2014)("jurisdiction shall be non-exclusive" is a permissive forum selection clause and court does not apply *Atlantic Marine* §1404(a) balancing test).

[38] *Wall Street Aubrey Golf, LLC v. Aubrey*, 189 Fed.Appx. 82, 86 (3d Cir. 2006)(Butler County).

[39] *Atlantic Marine*, 134 S.Ct. at 580. ("[B]ecause both § 1404(a) and the *forum non conveniens* doctrine from which it derives entail the same balancing-of-interests standard, courts should evaluate a forum-selection clause pointing to a nonfederal forum in the same way that they evaluate a forum-selection clause pointing to a federal forum.).

[40] *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995)(citations omitted).

[41] *See Shutte v. Armco Steel Corp.*, 431 F.2d at 25.

[42] *Atlantic Marine*, 134 S.Ct. at 584, n.8. While venue is proper here and the *Jumara* factors weigh against transfer, the Walls could choose to withdraw their complaint and re-file against both Defendants in Monmouth County, New Jersey. If Altium and Corona Capital did have a business relationship, the state court may have personal jurisdiction over Corona Capital and the Walls could resolve both claims in the same venue.

[43] *Jumara*, 55 F.3d at 879–80 (citations omitted).

[44] *Allstate Settlement Corp. v. Rapid Settlements, Ltd.*, 559 F.3d 164, 170 (3d Cir. 2009).