# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| ROBERT WALL and | : CIVIL ACTION |
| LINDA WALL | : |
| | : |
| v. | : |
| | : NO. 16-1044 |
| ALTIUM GROUP, LLC | : |

## MEMORANDUM

**KEARNEY, J.**                                                                 **January 12, 2017**

A person injured by another's negligence may be awarded a sum of money either through settlement or verdict. Sometimes the party at fault agrees to pay the verdict or settlement in a defined amount over a defined length of time as financed by a lender. These payments are called structured annuity payments. Finance companies have created a secondary market selling these structured annuities because the injured party needs immediate cash and is willing to assign her right to the structured annuity payments at a slightly discounted value in a lump sum. The finance company, in turn, finds intermediaries and stockbrokers who sell the assignment of the structured annuity payments to an investor. Today, we address the damage when a court later invalidates the assignment of the structured annuity payments but the investor has already paid and turns around and sues the finance company selling her the annuity payments. When, as here, the investor has no specific commercial relationship with the original injured party who sold the structured annuity, she may not sue the finance company for breach of transfer warranties under the Uniform Commercial Code but may sue the intermediary seller receiving her investment for breach of contract.

I.  **Allegations and defenses.**

Corona Capital purchases structured annuity payments at a discount from injured individuals who settled personal injury claims. Altium Group LLC connects Corona Capital, with potential purchasers or investors for annuity payments. Robert and Linda Wall are two of those investors, who with the aid of their financial advisor, purchased a structured annuity payment from Altium.[1]

On November 8, 2011, the Walls and Altium signed a "Master Structured Settlement Receivable Purchase and Sale Agreement and Non-Circumvention Agreement." Under this agreement, the Walls wired Altium a $5,000 deposit on the purchase price and agreed to wire Altium the balance upon receipt of the Closing Book.[2]

Corona Capital then arranged for the purchase and transfer of Kenneth Stevens' structured settlement payment rights, payable under an annuity issued by New York Life Insurance. On January 12, 2012, Kenneth Stevens signed an "Absolute Assignment and UCC Article 9 Security Agreement" assigning his right to payments from New York Life to Corona Capital.

Corona Capital then sold the right, title, and interest payments to Mr. Stevens' annuity to Altium on March 15, 2012.[3] A Florida state court granted Corona Capital's petition to approve the transfer on March 28, 2012 entitling the Walls to receive 60 payments of $3,000 with 3% annual increase in payments beginning on June 1, 2014, and ending with the last payment on

---

[1] ECF Doc. No. 22 ¶¶ 5-7.

[2] *See* ECF Doc. No. 47-1.

[3] *See* ECF Doc. No. 29-2.

May 1, 2019.[4]

On April 19, 2012, Altium sent the Walls the "Closing Books" and the Walls wired Altium the remaining purchase price of $147,833.37.

Over two years later, the same Florida state court vacated its March 28, 2012 Order and ordered New York Life Insurance to make the structured settlement payments to Stevens' attorneys and not to the Walls.[5]

The Walls paid $152,833.37 to Altium under the Master Agreement but never received payments from Altium or Corona Capital.[6] The Walls sued Altium Group and Corona Capital for breach of Uniform Commercial Code ("UCC") transfer warranties, breach of contract, and unjust enrichment. We lacked personal jurisdiction over Corona Capital and dismissed it on November 22, 2016.[7]

## II. Analysis

Altium now moves for judgment on the pleadings seeking to dismiss Walls' claim for breach of the Uniform Commercial Code's transfer warranties and breach of the November 8, 2011 Master Agreement.[8]

---

[4] ECF Doc. No. 22-1 at 2, 5.

[5] ECF Doc. No. 22-1 at 8.

[6] ECF Doc. No. 22 ¶ 18.

[7] ECF Doc. No. 41.

[8] A court's review of a Rule 12(c) motion to dismiss, similar to review of a motion to dismiss under Rule 12(b)(6), must construe the facts alleged in the pleadings, and the inferences to be drawn from them, in the light most favorable to the nonmoving party. *See Leamer v. Fauver*, 288 F.3d 532, 535 (3d Cir. 2002). "[J]udgment should not [] be[] granted unless the moving party has established that there is no material issue of fact to resolve, and that it is entitled to judgment in its favor as a matter of law." *Id.* at 535 (citing *Jablonski v. Pan American World Airways, Inc.*, 863 F.2d 289, 290–91 (3d Cir. 1988)).

3

### A. We dismiss the Walls' breach of transfer warranty claim.

The Walls allege Altium breached the warranty of signature guaranteed under Pennsylvania's Commercial Code, 13 Pa. C.S. § 3416.[9] The Walls attached the January 12, 2012 "Absolute Assignment and UCC Article 9 Security Agreement" between Mr. Stevens and Corona Capital and allege the January 12, 2012 Assignment document carries UCC warranties. Neither the Walls nor Altium are parties to the January 12, 2012 Assignment. Altium cannot, as a matter of law, breach the transfer warranties under the Uniform Commercial Code because the Walls were not parties to the January 12, 2012 Assignment.

Under Pennsylvania's Commercial Code § 3416(a)(1), "[a] person who transfers an instrument for consideration warrants to the transferee and, if the transfer is by indorsement, to any subsequent transferee that . . . the warrantor is a person entitled to enforce the instrument."[10] UCC Comment to "subsection (a)(1) is a warranty that the *transferor is a person entitled to*

---

"[W]here, as here, a motion for judgment on the pleadings asserts that plaintiff fails to state a claim on which relief can be granted, the court considers the motion under the same standard as a Rule 12(b)(6) motion even where no motion to dismiss under Rule 12(b)(6) has been made." *Atiyeh v. Nat'l Fire Ins. Co. of Hartford*, 742 F. Supp. 2d 591, 595 (E.D. Pa. 2010). "Federal Rule of Civil Procedure 12(h)(2) provides that a defense of failure to state a claim upon which relief can be granted may be made by a motion for judgment on the pleadings." *Id.* at n.8 (citing Fed. R. Civ. P. 12(h)(2)). "A Rule 12(b)(6) motion requires the court to examine the sufficiency of the complaint." *Atiyeh*, 742 F. Supp. 2d at 595 (citing *Conley v. Gibson*, 355 U.S. 41, 45 (1957) (abrogated in other respects by *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007))). "Except as provided in Federal Rule of Civil Procedure 9, a complaint is sufficient if it complies with Rule 8(a)(2), which requires 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Atiyeh*, 742 F. Supp. 2d at 596. Rule 8(a)(2) does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

[9] ECF Doc. No. 22 ¶¶ 23-24.

[10] 13 Pa. C.S. § 3416(a)(1).

4

*enforce the instrument....*"[11]

The January 12, 2012 Assignment identifies the transferor as Corona Capital.[12] The Walls are not parties to the January 12, 2012 Assignment and are not entitled to enforce the Commercial Code warranty under § 3416(a)(1).

Even if the Walls could become a transferee under the Stevens' January 12, 2012 Assignment, they cannot recover because the assignment is not a negotiable instrument as a matter of law. An "instrument" is defined by the Commercial Code to mean "negotiable instrument."[13] Under Pennsylvania law, "annuities are not instruments. An instrument is defined in the UCC as a negotiable instrument."[14]

The term "negotiable instrument" is defined as "mean[] an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it: (1) is payable to bearer or to order at the time it is issued or first comes into possession of a holder; (2) is payable on demand or at a definite time; (3) and, does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money . . . ."[15] "[B]ut the promise or order may contain: an undertaking or power to give, maintain or protect collateral to secure payment; an authorization

---

[11] Comment to 13 Pa. C.S. § 3416 (1990)(emphasis added).

[12] ECF Doc. No. 22-1 at 13. "I hereby sell, assign, and convey to Corona Capital LLC ('the assignee')."

[13] 13 Pa. C.S. § 3104(b).

[14] *In re Custom Coals Laurel*, 258 B.R. 597, 601-02 (Bankr. W.D. Pa. 2001); *see also Matter of Newman*, 993 F.2d 90, 95 (5th Cir. 1993)(holding annuity contract was "general intangible" rather than "instrument" for Article 9 purposes).

[15] 13 Pa .C.S. § 3104(a).

5

or power to the holder to confess judgment or realize on or dispose of collateral; or a waiver of the benefit of any law intended for the advantage or protection of an obligor."[16]

The Assignment is not unconditional; it contained a crucial important condition precedent. The agreement required court approval of the assignment: "Assignee shall have received (a) a final non-appealable court order in compliance with the applicable structured settlement transfer act(s) and 26 USCA § 5891 approving the transfer by assignment of the Assigned Payments to Assignee (the "Court Order") and (b) an acknowledgement or stipulation signed by both the Settlement Obligor and Annuity Issuer satisfactory to Assignee in its sole discretion which acknowledges that Assigned Payments shall be forwarded directly to Assignee pursuant to the Court Order of the "Acknowledgement") [sic].[17]

The Assignment contains material conditions. It is not a negotiable instrument even if the Walls signed it. The Walls cannot bring claims based on a warranty attendant to a negotiable instrument.

## B. The Walls state a breach of contract claim.

The Walls allege they had a contract with Altium under "which Bob and Linda Wall were supposed to receive 60 payments of $3,000.00 with 3% annual increase in payments beginning on June 1, 2014 and with a last payment of May 1, 2019 in exchange for Bob and Linda Wall's payment of $152,833.37."[18] The Walls claim they performed under this contract, but Altium "breached the contract by failing to provide [the payments]."[19]

---

[16] 13 Pa .C.S. § 3104(a)(3).

[17] ECF Doc. No. 22-1, Ex. C, at 1-2 (D).

[18] ECF Doc. No. 22 ¶ 30.

[19] ECF Doc. No. 22, ¶ 31.

To state a breach of contract claim, the Walls must allege: (1) existence of a contract; (2) breach of a duty imposed by the contract; and (3) damages arising from such breach.[20] The first element is satisfied by November 8, 2011 contract between the parties.

Section 2.03 of the Master Agreement states "[t]he purpose of this Agreement, and the intent of the Parties in entering into this Agreement is to establish the terms and conditions under which [Altium] will convey such streams of payment to [the Walls], and [the Walls] will purchase such streams of payment from [Altium].[21] Section 3.05 lays out the procedure going forward, Altium will send the Walls a "closing book" after court approval of the annuity transfer, the Walls will pay the purchase price. There is no dispute the parties fulfilled these duties. Altium then sent the Closing Book, with its logo at the top, which shows the Walls were supposed to receive 60 payments of $3,000.00 with 3% annual increase in payments beginning on June 1, 2014 and with a last payment of May 1, 2019 for a total of $191,128.92 in exchange for their $152,833.37 purchase price.[22]

The Walls allege, and Altium admits in its Answer, they never received any part of the annuity payments, nor did Altium return their $152,833.37. Taking all inferences in their favor, the Walls state a claim for breach of contract and we deny Altium's motion for judgment on the

---

[20] The Master Agreement identifies the governing law of New Jersey. The elements of breach of contract are identical in Pennsylvania and New Jersey. *Cf. Granite Companies, LLC v. City Capital Corp.*, No. 07-3078, 2008 WL 3285914, at *2 (E.D. Pa. Aug. 8, 2008)(citing *Sampathachar v. Fed. Kemper Life Assurance Co.*, 186 Fed. Appx. 227 (3d Cir.2006)) and *Accurate Abstracts, LLC v. Havas Edge, LLC*, No. 14-1994, 2015 WL 5996931, at *4 (D.N.J. Oct. 14, 2015)( citing *Sheet Metal Workers Int'l Ass'n Local Union No. 27, AFL–CIO v. E.P. Donnelly, Inc.*, 737 F.3d 879, 900 (3d Cir. 2013).

[21] ECF Doc. No. 27-1 at 1.

[22] ECF Doc. No. 58 at 15.

pleadings on the breach of contract claim.

### III. Conclusion

We dismiss the Walls' breach of warranty claim as they cannot bring the claim as a matter of law. We deny Altium's motion as to the breach of contract claim.