# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| ROBERT WALL and<br>LINDA WALL | : CIVIL ACTION<br>:<br>: |
|---|---|
| v. | : NO. 16-1044<br>: |
| ALTIUM GROUP, LLC | : |

## MEMORANDUM

**KEARNEY, J.**                                                                                                    **April 30, 2019**

After we initially found a broker arranging for the purchase of an annuity later found fraudulent should be liable under a breach of contract claim to the investors, our Court of Appeals thought differently and directed judgment in favor of the broker on a breach of contract claim. We did not initially address the investors' alternative unjust enrichment claim as we found the contract claim warranted judgment. Our Court of Appeals directed us to consider whether the investors could recover on an unjust enrichment claim in the first instance. Following discovery and with both parties agreeing the issue is ripe as a matter of law, we today analyze whether the investors can recover their investment in the fraudulent annuity from the broker based on unjust enrichment. Under the governing New Jersey law, there can be no unjust enrichment claim in the existence of a valid contract. Our Court of Appeals found a valid contract but found the broker had not breached the contract and entered judgment for the broker on the contract claim. Consistent with New Jersey law, we today grant the broker's motion for summary judgment on the unjust enrichment claim. As difficult as this decision is for disappointed and possibly defrauded investors, they do not have a claim against the broker for unjust enrichment in the face of a valid contract governing the entirety of their relationship.

I. **Background**

A. **Adduced Facts.**[1]

After discussing investment opportunities with financial advisor Roy L. D'Alessandro, Robert and Linda Wall decided to invest in a structured settlement annuity listed by Defendant Altium Group, LLC ("Altium Group").[2] Altium Group, "a broker of structured settlement annuities,"[3] provides "listings of available streams of payments, including structured settlement payment rights from original payees, to financial advisors and certified financial planners, when the purchase is perfected through a transfer procedure regulated by federal and state statutes and requiring court approval."[4] The structured settlement annuity the Walls sought to acquire belonged to Kenneth Stevens, "who received the annuity—issued by the New York Life Insurance Company ('New York Life')—after [he] settled a personal injury matter in a Florida state court action."[5]

*The Walls and Altium Group sign the Master Agreement in 2011.*

On November 8, 2011, the Walls and Altium Group signed the Master Structured Settlement Receivable Purchase and Sale Agreement and Non-Circumvention Agreement ("Master Agreement").[6] In it, the parties declared their "purpose" and "intent . . . to establish the terms and conditions under which [Altium Group] will convey such streams of payment to [the Walls], and [the Walls] will purchase such streams of payment from [Altium Group]."[7] The Master Agreement required the Walls tender payment in two phases. First, the Walls agreed to pay Altium Group $5,000 "within 48 hours of [the Walls'] execution of a [subsequent] 'Contract to Purchase Payment Rights.'"[8] This initial payment would "be used (1) to secure [the Walls'] interest in the Contract to Purchase Payment Rights, and (2) for preparation of transaction documents and attorney's fees incurred to apply for and obtain court approval of the transaction contemplated by the Contract to Purchase Payment Rights."[9] The second and final payment,

2

"representing the Final Purchase Price, less the $5,000.00" original payment, would be tendered to Altium Group "within 48 hours of [the Walls'] receipt of the 'Closing Book.'"[10]

The parties agreed "[t]he validity, construction, and enforcement of th[e] [Master] Agreement shall be governed by the laws of the State of New Jersey, excluding its conflicts of law provisions."[11] The parties also agreed to recovery of attorney's fees related to enforcement: "[i]n any action to enforce this Agreement, the prevailing party shall be awarded all arbitration costs or court costs and reasonable attorney's fees incurred."[12]

### *Altium obtains and assigns to the Walls the rights to the Kenneth Stevens' structured settlement annuity before a Florida court vacates the transfer order.*

The Walls wired $5,000 to Altium Group on November 8, 2011.[13] On January 12, 2012, Corona Capital, LLC purchased the rights to Kenneth Stevens' structured settlement annuity under an "Absolute Assignment and UCC Article 9 Security Agreement."[14] On January 17, 2012, the Walls and Altium Group signed the Contract to Purchase Payment Rights ("the Addendum"), "an addendum to" the Master Agreement.[15] Under the Addendum, "[the Walls] agree[d] to purchase the Kenneth Stevens Transfer and [Altium Group] agree[d] to convey its interest in the Kenneth Stevens Transfer to [the Walls] subject to the Master Agreement."[16] Altium Group purchased from Corona Capital the rights to the Kenneth Stevens' structured settlement annuity on January 19, 2012.[17] The Structured Settlement Receivable Purchase and Sale Agreement between Altium Group and Corona Capital also describes Altium Group's "assign[ment] [of] its interest in the Receivable Payments to their designated assignee Robert L. Wall and Linda M. Wall."[18] The agreement between Altium Group and Corona Capital limits Corona Capital's liability to Altium Group "to cases in which [Corona Capital] has committed a material fraud upon [Altium Group]."[19]

3

Corona Capital petitioned in Florida state court for approval of the transfer of the Kenneth Stevens' Annuity in March 2012.[20] Florida Circuit Court Judge Michelle Morley approved the transfer on March 27, 2012.[21] Judge Morley directed the "[a]ssigned [p]ayments"—"60 guaranteed monthly payments of $3,000 beginning on June 01, 2014 with a 3% annual increase through and including May 01, 2019"—be paid to the Walls at their address in Grove City, Pennsylvania.[22] The Walls, in compliance with the Master Agreement, wired $147,851.37 to Altium Group on April 23, 2012.[23] Despite the size of the investment, Linda Wall swore she, her husband, and Mr. D'Alessandro "never" addressed or discussed the risk of the deal.[24]

The Walls never received a single payment on the Stevens annuity. In April 2013, Kenneth Stevens, represented by counsel, moved to vacate the March 2012 order approving the annuity transfer. Mr. Stevens argued he "was never made a party to [the] proceeding," "did not sign any of the documents submitted to this Court in support of the petition," and "was not served with a copy of the petition," as a result of "a fraud . . . committed upon the Court."[25] Judge Morley granted Mr. Stevens's motion on April 15, 2014, vacating the March 2012 order nunc pro tunc.[26] Judge Morley directed all payments on the annuity be sent to Mr. Stevens's attorney.

It is not disputed the Walls tendered $152,833.37 in total to Altium Group under the parties' Master Agreement and Addendum.[27] It is also not disputed the Walls did not receive payments under Kenneth Stevens' annuity or a refund of the $152,833.37. Altium Group's President and sole member, William D. Coluccio, swears in a written declaration Altium Group profited little from the Walls' payments on the Stevens annuity. He swears Altium Group forwarded $138,198.91 of the Walls' $152,833.37 "to Corona pursuant to the Structured Settlement Receivable Purchase and Sale Agreement between Altium and Corona," leaving a balance of $14,634.46.[28] Altium then allocated much of that remaining amount as follows: "Altium paid (i)

4

$4,585.00 to [financial advisor] D'Alessandro as a commission, (ii) $4,875.00 in direct transactional costs and fees for administrative staff, and (iii) $300.00 in legal fees."[29]

In the end, the Walls paid Altium Group $4,874.46 on Kenneth Stevens' annuity.[30] Although the Walls do not accept Altium Group's accounting—arguing "[t]here is nothing in the record to show that Altium informed the Walls that th[ese] transfer[s] took place"[31]—they adduce no evidence contradicting Altium's accounting. Linda Wall swore she does not believe Altium Group was complicit in any fraud, nor did Altium Group, to her knowledge, have reason to know of the underlying fraud before the Walls invested.[32] It is undisputed the Walls paid the $4,874.46 under a contract; nobody can argue this payment is gratuitous or otherwise volunteered by the Walls.

### B. The Walls sue Altium Group and Corona Capital.

The Walls sued Altium Group and Corona Capital in June 2016.[33] After Altium Group and Corona Capital timely removed this case, the Walls filed an Amended Complaint alleging against Altium Group claims for breach of contract, unjust enrichment, and breach of the Uniform Commercial Code's transfer warranties. Against Corona Capital, the Walls alleged claims for breach of contract, unjust enrichment, negligence, and breach of the Uniform Commercial Code's transfer warranties. We subsequently granted Corona Capital's motion to dismiss for lack of personal jurisdiction, leaving Altium Group as the remaining defendant in the case.[34] As relevant here, in January 2017 we granted Altium Group's motion for judgment on the pleadings as to the Walls' claims for breach of the Uniform Commercial Code's transfer warranties, but otherwise denied Altium Group's motion.[35] The Walls' claims for breach of contract and unjust enrichment proceeded through discovery.

5

### C. We entered summary judgment for the Walls on the contract claim.

The parties cross-moved for summary judgment on the Walls' claim for breach of contract claim against Altium. On March 28, 2017, we granted the Walls' motion and denied Altium's cross-motion.[36] We found, "as a matter of law, the Walls and Altium ha[d] a contract," and "Altium breached its duty under the Agreement because the Walls never received the 60 monthly payments or their $152,833.37 returned from Altium."[37] And although "the supervening event of underlying fraud in Stevens'[s] Annuity transfer rendered Altium's performance impossible," such an event "does not excuse Altium from restitution."[38] "We dismiss[ed] the Walls' unjust enrichment [claim] as mooted by [our] finding a contract existed."[39] On May 10, 2017, we entered judgment in favor the Walls and against Altium in the amount of $156,078.06. Altium appealed from our judgment.[40]

### D. Our Court of Appeals remands for further proceedings on the Walls' unjust enrichment claims.

Our Court of Appeals "reverse[d] [our] order of March 28, 2017, granting the Walls' motion for summary judgment and denying Altium's motion for summary judgment on the breach of contract claim."[41] Although affirming our fact findings, our Court of Appeals found we "misconstrued the transaction between Altium and the Walls."[42] Altium, our Court of Appeals held, "merely sold *the rights* to the underlying financial asset, a structured settlement annuity providing for a stream of payments, to the Walls."[43] It "did not make any promise or guarantee of the future performance of the financial asset, and, indeed, in our review of the Altium-Walls documents we could not find any such promise or guarantee."[44] Our Court of Appeals found Altium "fulfilled the terms of its contract, the delivery to the Walls of the rights to the annuity payments guaranteed by New York Life."[45]

6

As we originally found the existence of a contract mooted the Walls' unjust enrichment claim, our Court of Appeals remanded "for further proceedings on the Walls' unjust enrichment claim," without expressing an opinion on its merits.[46] On remand, the parties agree the Walls' unjust enrichment claim is the only claim remaining and the issue is ripe for decision as a matter of law on cross-motions.

**II.   Analysis**

The Walls argue recovery for unjust enrichment is necessary to remedy the unfairness the Walls suffered in receiving nothing in return for the $152,833.37 they paid to Altium. The Walls also emphasize the parties did not contemplate the fraud undermining the original transfer order. Altium Group argues the Walls cannot recover for unjust enrichment because Altium Group satisfied its contractual obligations to sell its rights to the stream of payments, and "there are no allegations . . . that the Walls and Altium had any dealings outside the scope of the Master Agreement or that Altium engaged in any sort of wrongful conduct."[47] After careful study of the record and our Court of Appeals' November 2018 decision holding Altium fulfilled its obligations under the parties' contract, we grant summary judgment to Altium.

Consistent with the Master Agreement's choice of law provision, we apply New Jersey law.[48] "Under New Jersey law, '[t]he constructive or *quasi* -contract [doctrine]. . . prevent[s] unjust enrichment or unconscionable benefit or advantage.'"[49] But while we may impose quasi-contractual obligations for the important "purpose of bringing about justice," we may not impose quasi-contract liability "if an express contract exists concerning the identical subject matter."[50] Our Court of Appeals, applying New Jersey law, has made clear "as long as a valid unrescinded contract governs the rights of the parties," we lack a "ground for implying a promise."[51] It is not disputed a valid, unrescinded contract governs the parties' relationship on the identical subject

7

matter. The parties agreed to govern their relationship under the Master Agreement (as modified by the subsequent Addendum). Our Court of Appeals found "Altium did not breach a contract with the Walls because it fulfilled the terms of its contract, the delivery to the Walls of the rights to the annuity payments guaranteed by New York Life."[52]

The Walls argue they can still alternatively pursue unjust enrichment notwithstanding the parties' contract, relying substantially on cases describing the right to alternatively plead claims for breach of contract and unjust enrichment. To the extent cases arising at the motion to dismiss stage inform our summary judgment analysis today, these cases support our application of the principle "recovery under quasi-contractual or other equitable claims is precluded in the presence of a valid contract."[53] The Walls, for example, emphasize Judge Brown's statement in *Titan Stone, Tile & Masonry, Inc. v. Hunt Construction Group*, "[a] plaintiff may . . . put forth contractual, quasi-contractual and other equitable claims for relief in its complaint, even if the plaintiff has not sought rescission of the contract."[54] But Judge Brown explained this rule in the context of a motion to dismiss. He also acknowledged "the uncontested truth that *recovery* under quasi-contractual or other equitable claims is precluded *in the presence of a valid contract.*"[55] Permitting alternative pleading, however, in no way undermines our finding Altium Group's performance in full compliance with its contractual obligations precludes recovery for unjust enrichment.

We find support as well in *Dykstra v. Ryder/P.I.E. Nationwide, Inc.*, from which the Walls extract the following quotation: "[i]t is a determination of the trial court whether plaintiff has an adequate remedy at law. Should the court decide that the plaintiff is not entitled to recovery pursuant to a contractual theory, then it may in turn deal with one equitable theory."[56] *Dykstra* also involved a motion to dismiss, and we must consider the quoted sentence in context. Judge Ackerman explained, in the sentence immediately preceding the ones the Walls emphasize,

8

"*alternative pleading* of contract and quasi-contract claims is permissible."[57] We are not dealing with alternative pleading at this juncture, as our Court of Appeals has already found a valid, unrescinded contract governs the parties' relationship as to Kenneth Stevens' structured settlement annuity.

Yet seeking to distance themselves from the rule a valid, unrescinded contract precludes recovery for unjust enrichment, the Walls argue their agreement with Altium Group "did not contemplate the Parties' obligations to each other if underlying fraud was discovered after the purported transfer, making the contract impractical."[58] This uncontemplated circumstance, the Walls argue, means their unjust enrichment claim "falls outside the scope of the agreement."[59] But even if this somehow does not preclude consideration of the unjust enrichment claim on the merits—a dubious interpretation of the contract, we believe—the Walls' unjust enrichment claim must still fail on the merits because Altium Group obtained no benefit beyond the one expressly permitted under the parties' contract.

"Under New Jersey law, to prove a claim for unjust enrichment, 'a party must demonstrate that the opposing party received a benefit and that retention of that benefit without payment would be unjust.'"[60] Recovery under the doctrine of quasi-contract requires the plaintiff "show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration *enriched defendant beyond its contractual rights*."[61] The undisputed facts in this case reveal no such enrichment beyond Altium Group's rights under the Master Agreement (as modified by the Addendum). While we initially found Altium Group breached its contractual obligation, our Court of Appeals reversed our order, holding "Altium did not breach a contract with the Walls because it fulfilled the terms of its contract, the delivery to the Walls of the rights to the annuity payments guaranteed by New York Life."[62] Altium, our

9

Court of Appeals held, agreed "to sell a stream of payments," not "to make a stream of payments"—and these two are "not the same thing."[63]

Our Court of Appeals emphasized Altium Group's adherence to the terms of the contract, undermining the Walls' pled characterization of the transaction as the Walls' "conferr[al] [of] a benefit upon Defendant Altium Group by paying $152,833.37 and receiving nothing in return."[64] Our Court of Appeals held "Altium sold a structured settlement annuity to the Walls in a contract without a provision by which Altium promised or guaranteed that the annuity payments would be made."[65] No extra-contractual benefit or enrichment flowed to Altium Group. Linda Wall admitted she and her husband "never discussed risk,"[66] she does not believe Altium Group was complicit in any fraud, and Altium Group, to her knowledge, never had any reason to know of the underlying fraud before the Walls invested.[67]

Unfortunate though it may be for the Walls, we have no mandate to transform New Jersey's doctrine of quasi-contract into a blanket insurance policy against risky investments governed by written contract. Altium Group "has not received any benefit it was not entitled to under the terms of the agreement," and "[t]hus the 'essential requirement of unjust enrichment of defendant does not appear.'"[68] We express here no opinion on a timely claim the Walls may assert against Corona Capital or another party in an appropriate forum.

### III. Conclusion

In the accompanying order, we grant Defendant Altium Group's motion for summary judgment and deny the Walls' motion for summary judgment.

---

[1] Our Policies require a Statement of Undisputed Material Facts ("SUMF") and an appendix in support of summary judgment. The Walls filed their SUMF at ECF Doc. No. 145 and their copy of the joint appendix at ECF Doc. 144. Altium Group filed its SUMF at ECF Doc. No. 139 and its copy of the joint appendix at ECF Doc. No. 141. The parties' copies of the Joint Appendix are identical, so we refer to exhibits in the appendices by Bates number, for example, "Joint App. 1a."

10

---

[2] Joint App. at 101a–102a (N.T. L Wall, Feb. 23, 2017).

[3] *Wall v. Corona Capital, LLC*, 756 F. App'x 188, 189 (3d Cir. 2018), *as amended on denial of reh'g* (Dec. 28, 2018).

[4] ECF Doc. Nos. 141, 144, Joint App. at 158a.

[5] *Wall*, 756 F. App'x at 189.

[6] ECF Doc. Nos. 141, 144, Joint App. at 1a–5a.

[7] *Id.* at 1a.

[8] *Id.* at 2a.

[9] *Id.*

[10] *Id.* The Master Agreement provided the "Closing Book shall include, among other items, a certified copy of the final order approving the transfer of structured settlement payment rights, and, if included, the stipulation signed by all parties." *Id.*

[11] ECF Doc. Nos. 141, 144, Joint App. at 4a. The Master Agreement also contained defined the forum: "[i]n the event of a dispute concerning this agreement, the parties agree that venue lies in a court of competent jurisdiction in Monmouth County, New Jersey." *Id.*

[12] *Id.* The "Attorney's Fees" section of the Master Agreement also provides: "Additionally, attorney's fees incurred in enforcing any judgment are recoverable as a separate item, and this paragraph regarding post-judgment attorney's fees shall be severable from the other provisions of this Agreement, shall survive any judgment, and shall not be deemed merged into any judgment." *Id.* We set a briefing schedule for an award of attorney's fees in the accompanying Order.

[13] *See* ECF Doc. Nos. 141, 144, Joint App. at 264a. The Walls' bank statement, *id.*, describes a "share draft" of $5,018.00 on November 8, 2011. The parties, however, do not dispute the wire transfer totaled $5,000, which is consistent with the payment structure set out in the Master Agreement.

[14] *Id.* at 186a.

[15] *Id.* at 6a.

[16] *Id.* The Addendum described an "[e]stimated [p]urchase [p]rice (based on 2/15/2012 closing date)" of $151,534,82. *Id.*

[17] *Id.* at 12a–14a.

[18] *Id.* at 13a.

[19] *Id.*

[20] *Id.* at 28a–32a.

[21] *Id.* at 23a–27a.

[22] *Id.* at 26a.

[23] *Id.* at 95a, 265a.

[24] *Id.* at 105a–106a (N.T. L Wall, Feb. 23, 2017).

[25] *Id.* at 74a.

[26] *Id.* at 81a. Judge Morley found "[a]t the time the [March 27, 2012] Order was entered, the Court had no jurisdiction over Respondent Kenneth Stevens because he did not sign any of the documents submitted to this Court in support of the Petition," and "Kenneth Stevens did not reside at or receive mail at the address to which the Petition was mailed and he was therefore not served with a copy of the Petition and did not receive the required disclosures." *Id.*

[27] *See* ECF Doc. No. 139 at ¶ 32; ECF Doc. No. 153 at ¶ 32.

[28] ECF Doc. Nos. 141, 144, Joint App. at 161a, ¶ 12.

[29] *Id.*

[30] *Id.*

[31] ECF Doc. No. 153 at ¶¶ 33–35.

[32] ECF Doc. Nos. 141, 144, Joint App. at 119a–120a (N.T. L. Wall. Feb. 23, 2017).

[33] ECF Doc. No. 1-2.

[34] ECF Doc. No. 41.

[35] ECF Doc. No. 60.

[36] ECF Doc. No. 96 (Order); ECF Doc. No. 97 (Memorandum).

[37] ECF Doc. No. 97 at 5.

[38] *Id.* at 8. Altium also argued frustration of contractual purpose. But we explained "[f]rustration of contractual purpose does not apply because the parties did not contemplate an outside event in the future instead, they agreed the Walls would pay Altium $152,833.37 and Altium would guarantee "60 Monthly Payments of $3,000.00 ..." and had its counsel review and approve the transfer." *Id.* (quoting ECF Doc. No. 85 at 143).

[39] *Id.* at 9.

[40] ECF Doc. No. 111.

[41] *Wall*, 756 F. App'x at 194. Before reaching the merits of our grant of summary judgment to the Walls, our Court of Appeals "affirm[ed] [our] denial of Altium's motion to dismiss on *forum non conveniens* grounds." *Id.* at 192.

[42] *Id.* at 193.

[43] *Id.* (emphasis added).

[44] *Id.*; *see also id.* (finding "there is no language expressly giving the Walls recourse against Altium, and there is nothing in the contract indicating that the parties intended for Altium to bear the risk of nonpayment of the annuity payments which can be regarded as the same as receivables under a contract").

[45] *Id.*

[46] *See id.* at 194 ("We do not address the question of whether the Walls may have recourse against any individual or entity not a party to this appeal or even against Altium on the unjust enrichment claim that we are reinstating and remanding for disposition. Our decision today is limited to holding that the District Court did not err when it rejected the *forum non conveniens* motion to dismiss but did err in determining that Altium is liable to the Walls for breach of contract.").

[47] ECF Doc. No. 140 at 14.

[48] The parties emphasize the similarity between Pennsylvania and New Jersey law governing unjust enrichment. Given the lack of any identified (or argued) actual conflict between Pennsylvania and New Jersey law, we need not conduct a choice of law analysis.

[49] *Suburban Transfer Serv., Inc. v. Beech Holdings, Inc.*, 716 F.2d 220, 226 (3d Cir. 1983) (alteration in original) (quoting *West Caldwell v. Caldwell*, 138 A.2d 402, 412 (N.J. 1958)).

[50] *Id.* at 226–27.

[51] *Id.* at 227; *see also Van Orman v. Am. Ins. Co.*, 680 F.2d 301, 311 (3d Cir. 1982) (explaining "New Jersey courts regard the existence of a valid contract as a bar to recovery under" quasi-contract theories).

[52] *Wall*, 756 F. App'x at 193.

[53] *Titan Stone, Tile & Masonry, Inc. v. Hunt Const. Grp., Inc.*, No. 05-3362, 2006 WL 2788369, at *5 (D.N.J. Sept. 27, 2006) (emphasis omitted).

[54] *Id.*

<sup>55</sup> *Id.* (second emphasis added).

<sup>56</sup> *Dykstra v. Ryder/P.I.E. Nationwide, Inc.*, No. 85-3212, 1985 WL 25639, at *5 (D.N.J. Dec. 9, 1985).

<sup>57</sup> *Id.* (emphasis added).

<sup>58</sup> ECF Doc. No. 143 at 7 (emphasis omitted).

<sup>59</sup> *Id.* at 8.

<sup>60</sup> *China Falcon Flying Ltd. v. Dassault Falcon Jet Corp.*, 329 F. Supp. 3d 56, 77 (D.N.J. 2018) (internal quotation marks omitted) (quoting *Thieme v. Aucoin–Thieme*, 151 A.3d 545, 557 (N.J. 2016)).

<sup>61</sup> *Id.* at 77 (emphasis added) (citation omitted).

<sup>62</sup> *Wall*, 756 F. App'x at 193.

<sup>63</sup> *Id.*

<sup>64</sup> ECF Doc. No. 22 at ¶ 42.

<sup>65</sup> *Wall*, 756 F. App'x at 193.

<sup>66</sup> ECF Doc. Nos. 141, 144, Joint App. at 106a (N.T. L. Wall. Feb. 23, 2017).

<sup>67</sup> *Id.* at 119a–120a (N.T. L. Wall. Feb. 23, 2017).

<sup>68</sup> *Beech Holdings*, 716 F.2d at 227 (quoting *Van Orman*, 680 F.2d at 311).