UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Robert Wall and Linda Wall, Husband and Wife : | Case No.: 2:16-cv-01044-MRH |
| : | |
| Plaintiffs : | Hon. Mark A. Kearney |
| : | |
| v. : | |
| : | |
| Corona Capital, LLC and : | |
| Altium Group, LLC : | |
| : | |
| Defendants | |

**PLAINTIFFS ROBERT AND LINDA WALL'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT ALTIUM GROUP, LLC'S MOTION FOR ATTORNEYS' FEES AND COSTS**

Plaintiffs Robert Wall and Linda Wall, Husband and Wife ("Plaintiffs"), through their undersigned counsel, The Chiacchio Firm, submit this Memorandum of Law in Opposition to Defendant Altium Group, LLC's ("Altium") Motion for Attorneys' Fees and Costs.

I.   **APPLICABLE STANDARD**

In cases where there is a written contract that states attorneys' fees are to be awarded to the prevailing party, the lodestar method of calculating the reasonableness of attorneys' fees is appropriate. *See Devon Robotics, LLC v. ITOCHU Int'l, Inc.*, 2013 U.S. Dist. LEXIS 144491, *16 (E.D. Pa. Sept. 30, 2013).[1]

---

[1] Because the Master Agreement, drafted by Defendant/Movant Altium and containing the fee shifting provision, states that New Jersey law governs, Defendant/Movant should have addressed the well-established and clearly delineated factors applicable to a fee petition or motion under New Jersey law and the Motion could be denied on that basis. *See* WM *Capital Partners XXXIV, LLC v. Bartholomew*, 2017 U.S. Dist. LEXIS 4572, 31 (E.D.P.A. 2017); *N. Bergen Rex Transp. v. Trailer Leasing Co.*, 730 A.2d 843, 850-851 (N.J. Supreme Court 1999) (applying the eight factors under N.J. RPC 1.5(a) applicable to attorney's fees requests: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; (8) whether the fee is fixed or contingent).  Regardless, as laid out in this

"To fix the size of a prevailing party's fee award, a court must determine the appropriate billing rate for the party's attorneys as well as the number of hours those attorneys reasonably expended on the action." *Interfaith Community Organization v. Honeywell Intern., Inc.*, 426 F.3d 694, 703 n.5 (3d Cir. 2005) *citing Blum v. Stenson*, 465 U.S. 886, 888 (1984). Multiplying the total hours spent by the hourly billing rate is the lodestar. *Id*. (citation omitted).

"A party seeking attorney fees bears the ultimate burden of showing that its requested hourly rates and the hours it claims are reasonable." *Id*. (*citing Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990). "To initially satisfy this burden, 'the fee petitioner must submit evidence supporting the hours worked and the rates claimed.'" *Id*. (*quoting Hensley*, 461 U.S. at 433). "If it wishes to challenge the fee award, the opposing party must then object 'with sufficient specificity' to the request." *Id*. "Once the opposing party has objected, the party requesting fees must demonstrate to the satisfaction of the court that its fee request is reasonable. In reviewing a fee application, a district court must conduct 'a thorough and searching analysis.'" *Id*. *quoting Evans v. Port Auth. of N.Y. & N.J.*, 273 F.3d 346, 362 (3d Cir. 2001)).

## II.  ARGUMENT

**A.**  **Altium Is Not Entitled to Attorneys' Fees or Costs Relating to Appellate Work**

In Defendant Altium's Motion for Attorneys' Fees and Costs and Memorandum of Law (ECF 160, 161), Altium impermissibly asks this Court for an award of attorneys' fees that includes appellate work. The relevant authority could not be any clearer. Third Circuit Local Appellate Rule 108 makes it **mandatory** for a party to apply to the **Third Circuit** for attorneys' fees pertaining to "**a case filed in this [the Third Circuit] court**" (emphasis added). Local

---

brief, Defendant/Movant is not entitled to the fees and costs that they seek under the Third Circuit's Local Appellate Rules and case law cited in this opposition.

Appellate Rule 108 is attached to this Memorandum of Law as "**Exhibit A**". However, for this Court's convenience, L.A.R. 108 states as follows:[2]

**"L.A.R. MISC. 108.0 APPLICATIONS FOR ATTORNEY'S FEES AND EXPENSES**

**108.1 <u>Application for Fees</u>**

(a) Except as otherwise provided by statute, **<u>all applications</u> for an award of attorney's fees and other expenses relating to a case filed in this court, regardless of the source of authority for assessment, <u>must</u> be filed within 30 days after the entry of this court's judgment**, unless a timely petition for panel rehearing or rehearing en banc has been filed, in which case a request for attorney's fees **<u>must be filed within 14 days after the court's disposition of such petition</u>**. Such application **<u>must</u>** be filed with the clerk in the time set forth above **<u>whether or not the parties seek further action in the case</u>** or further review from any court.

(b) The court will **<u>strictly adhere</u>** to the time set forth above and grant exceptions only in extraordinary circumstances.

(c) The application **<u>mus</u>**t include a short statement of the authority pursuant to which the party seeks the award. The application **<u>must</u>** also show the nature and extent of services rendered and the amount sought, **<u>including an itemized statement in affidavit form from the attorney stating the actual time expended and the rate at which fees are computed</u>**, together with a statement of expenses for which reimbursement is sought.

Source: 1988 Court Rule 27.1

Cross-references: None

Committee Comments: Prior Court Rule 27.1 has no counterpart in FRAP and is therefore classified as Miscellaneous. No substantive change from prior Court Rule 27.1 is intended. L.A.R. Misc. 108.3 addresses claims for attorney's fees and expenses under the Criminal Justice Act, 18 U.S.C. § 3006A. Petition for rehearing en banc was substituted for "suggestion for rehearing en banc" in 2008 to conform to changes in FRAP.

**108.2 <u>Objections to Applications for Fees</u>**

Written objections to an allowance of attorney's fees, setting forth specifically the basis must be filed within 10 days after service of the application. Thereafter, the court may, when appropriate, either refer the application to the district court or agency where the case originated or refer the application to a master.

Source: 1988 Court Rule 27.2

---

[2] The only subsection of L.A.R. 108 that is not quoted in the text surrounding this footnote is Subsection 108.3 which is irrelevant because it only addresses attorney's fees under the Criminal Justice Act.

Cross-references: FRAP 48; 3d Cir. L.A.R. 48.0

Committee Comments: Prior Court Rule 27.2 has no counterpart in FRAP and is therefore classified as Miscellaneous. No substantive change from prior Court Rule 27.2 is intended."

(emphases added).

L.A.R. 108 of course makes sense because an *appellate court* is presumably in a better position than a trial court to evaluate the amount of time spent on *appellate work*. A perfect example of just how straight forward the application of L.A.R. 108 is considered to be when a party, such as Altium, attempts to ignore L.A.R. 108 can be found in *Jurinko v. Medical Protective Co.*, 2009 U.S. Dist. LEXIS 66324 (E.D. Pa.), wherein the Court held:[3]

> "Plaintiffs next ask this Court to award them **_appellate_** attorneys' fees. Miscellaneous Local Rule of Appellate Procedure 108 ("L.A.R. Misc. 108") **_governs_** applications for appellate attorneys' fees and expenses in the Third Circuit Court of Appeals.[24] In relevant part, L.A.R. Misc. 108 provides:
>
> 108.1 Application for Fees
>
> (a) Except as otherwise provided by statute, **_all applications_** for an award of attorney's fees and other expenses **_relating to a case filed in this Court_**, regardless of the source of authority for assessment, **_shall_** be filed within thirty (30) days after the entry of this Court's judgment, unless a timely petition for rehearing or suggestion for rehearing en banc has been filed, in which case a request for attorney's fees **_shall_** be filed within fourteen (14) days after the Court's disposition of such petition or suggestion. Such application shall be filed with the

---

[3] The footnotes found within the block quote of *Jurinko* above are the following:

Fn 24  L.A.R. Misc. 108. But see *Gallatin*, 2007 U.S. Dist. LEXIS 80538, 2007 WL 3231829 (awarding appellate attorneys' fee application which was not filed pursuant to L.A.R. Misc108, **without reference** to L.A.R. Misc. 108). (emphasis added).

Fn 25  Cases from within this Circuit and District reflect the proper procedure by which an appellate counsel fee request may be determined by a district court, i.e., the process contemplated in L.A.R. Misc. 108.2, **whereby such fee application** is made to the circuit court **and [then] that court remands the matter to the district court**. (emphasis added).  See, e.g., *Planned Parenthood of Cent. New Jersey v. Attorney General of State of New Jersey*, 297 F.3d 253, n. 2 (3d Cir. 2002) (**noting that application for appellate fees was originally submitted to circuit court, then remanded to district court**) (emphasis added); *Barnes Foundation v. Township of Lower Merion*, No. 96-372, 2006 U.S. Dist. LEXIS 48638, 2006 WL 2037464, at *2 (E.D. Pa. July 18, 2006)(**noting that Court of Appeals had remanded appellate fee application under L.A.R. Misc. 108 for determination by district court**) (emphasis added); *Whiteland Woods, L.P. v. Township of West Whiteland*, No. 96-8086, 2001 U.S. Dist. LEXIS 12210, 2001 WL 936490, at *1 (same).

Fn 26  No. 98-5956, 2001 U.S. Dist. LEXIS 17351, 2001 WL 1298996, at *1 (E.D. Pa. Oct. 25, 2001).

Fn 27  Id.

Fn 28  Id.

Clerk in the time set forth above whether or not the parties seek further action in the case or further review from any Court.

. . . .

108.2 Objections to Applications for Fees

Written objections to an allowance of attorney's fees, setting forth specifically the basis for objection, shall be filed within ten (10) days after service of the application. Thereafter, the Court may, when appropriate, either refer the application to the district court where the case originated or refer the application to a Master.

*<u>Under L.A.R. Misc. 108, requests for attorneys' fees for work on cases before the Third Circuit Court of Appeals must be filed in that court. That L.A.R. Misc. 108 requires appellate attorney fee applications to be filed with the Third Circuit and not the district court is underscored in section 108.2, which describes circumstances in which such fee applications may be referred by the circuit court to the district court.[25]</u>* Thus, in the case *Wolgin v. Kennington* https://advance.lexis.com/document/?pdmfid=1000516&crid=e825c422-74e7-4de4-b65d-ce28caa35314&pddocfullpath=%2Fshared%2Fdocument%2Fcases%2Furn%3AcontentItem%3A4WXB-8HC0-TXFR-P1VD-00000-00&pddocid=urn%3AcontentItem%3A4WXB-8HC0-TXFR-P1VD-00000-00&pdcontentcomponentid=6413&pdshepid=urn%3AcontentItem%3A7XXP-HVF1-2NSD-N361-00000-00&pdteaserkey=sr0&pditab=allpods&ecomp=byrLk&earg=sr0&prid=418f15ee-daeb-4482-8354-af21c77e20f6*Limited, Inc.*, a court in this District *<u>denied a party's motion for attorneys' fees and expenses incurred in connection with an appeal, where the application was made directly to the district court.[26]</u>* Referring to L.A.R.Misc. 108, the court denied the motion, stating, *<u>"[t]he language of the rule is clear. In order to recover attorney's fees . . . relating to any case filed in the Third Circuit Court of Appeals, parties must file in accordance with Rule 108.1. Therefore, this matter is not before the proper court."[27]</u> <u>Here, Plaintiffs filed their appellate fee application in this Court, not in the Court of Appeals as required under L.A.R. Misc. 108. "Therefore, this matter is not before the proper court,"[28] and Plaintiffs' request for appellate attorneys' fees will be denied.</u>*"

 (emphases added).

See also *Freeman v. Dir. of the N.J. Div. of Alcoholic Bev. Control*, 538 F. App'x 204, 207 (3d Cir. 2013) (explaining that "[a] prevailing party may request appellate attorneys' fees and costs by motion supported by an affidavit to **the same panel that heard the appeal**.") (emphasis added); *Avaya Inc. v. Telecom Labs, Inc.*, 2016 U.S. Dist. LEXIS 194346 (W.D. Pa).

5

In the case at bar, the Third Circuit Appeal was filed on June 9, 2017 and the Third Circuit issued its judgment on November 23, 2018.[4] Appellees/Plaintiffs' panel rehearing was disposed of on December 28, 2018.  Altium made no filing with the Third Circuit under L.A.R. Misc. 108.1 seeking attorneys' fees.  L.A.R. 108.1 and the case law interpreting and applying it make clear that any application for attorneys' fees and costs relating to an appeal must be made directly to the panel that heard the appeal.  As Altium has made no such application, it is not entitled to seek from this District Court an award of attorneys' fees and costs relating to the appeal.  Therefore, as shown on the attached spreadsheet ("**Exhibit B**") $45,735.00 in attorneys' fees[5] and $10,016.38 in costs[6] totaling $55,751.38 relating to appellate work should be deducted from Altium's demand.[7]

B.   **Altium is Barred from Seeking Fees for Attorney's Not Admitted.**

In the recent Western District of Pennsylvania case of *Caplan v. Premium Receivables LLC*, 2015 U.S. Dist. LEXIS 98843 (W.D. Pa.), the court applied the well-established law that a party may not recover attorney's fees for attorneys who are neither admitted to practice in the

---

[4] The Third Circuit's Judgment states, "The parties will bear their own costs on this appeal." Local Appellate Rule 39.0 addresses applications for costs, however that rule is superfluous to the case at bar because of the Third Circuit's holding that each party bears its own costs for the appeal. *See also* ECF 132, Third Circuit Mandate.

[5] A large portion of work performed by Altium's law firm Kudman Trachten Aloe, LLP was related to the Third Circuit Appeal.  *See* ECF 160-4, invoices 35614, 35709, 35870, 36058, 36267, 36450, 36634, 37671, 37872, 38191, 38324 totaling $45,735.00. See also ECF 160-3, Retainer Agreement for Appellate work.

[6] *See* Post & Schell, P.C. invoices for Third Circuit Appeal costs, ECF 160-8, pp. 18 ($147.50); 19 ($944.00); 21 ($505.00) totaling $1,596.50.
See also Kudman Trachten Aloe, LLP invoices for Third Circuit Appeal costs, ECF 160-4, pp. 2 ($157.74); 8 ($134.82); 15 ($537.84); 18 ($87.01); 20 ($35.36); 25 ($274.82); 28 ($48.23); 31 ($50.43); 34 ($105.42); 40 ($1,040.36); 42 ($55.13) totaling $2,568.74.
See also Unknown vendor invoices for Third Circuit Appeal costs, ECF 160-5, pp. 3-4 August 20, 17 and November 30, 2017 in the amounts of $5,338.14 and $513.00 respectively totaling $5,851.14.

[7] Plaintiffs Bob and Linda Wall also note that Altium should not recover attorney fees for time spent working on its failed Motion to Dismiss asking this Court to dismiss the lawsuit based on a forum selection clause.  In a detailed analysis, the Third Circuit **affirmed** this Court's decision that the forum selection clause was permissive and not mandatory.  Therefore, Altium was not the "prevailing party" on this core issue that was time consuming.

Commonwealth of Pennsylvania nor admitted *pro hac vice* in the Western District of Pennsylvania unless the attorneys merely acted as "consultants". The concise five (5) prong test for whether an attorney meets the "consultant" exception, which is quoted below, is clearly not met Attorney David Saponara who worked on this case for Altium (Michael Betts is admitted in Pennsylvania and the Western District while Paul Aloe became admitted to the Western District shortly after being hired by Altium). As the Pennsylvania Bar records show, Attorney Saponara is not admitted to practice in the Commonwealth of Pennsylvania and as the docket shows he was not admitted *pro hac vice*. For this Court's convenience, the opinion in *Caplan* is attached as "**Exhibit C**". However, the entire relevant and clearly applicable section of the opinion follows:[8]

> "[T]he determination of a reasonable attorney fee" is governed "by the traditional lodestar method[.]" *Jackson v. Allied Interstate*, LLC, No. 2:12CV1144, 2013 U.S. Dist. LEXIS 109996, 2013 WL 3990875, at *4 (W.D. Pa. Aug. 5, 2013). This familiar method 'entails multiplying the total number of hours reasonably expended by a reasonable hourly rate.' *Bilazzo v. Portfolio Recovery Associates*, LLC, 876 F. Supp. 2d 452, 458 (D.N.J. 2012) (citations omitted). 'The burden of establishing the reasonableness of a fee request falls on the plaintiff's counsel.' *Jackson*, 2013 U.S. Dist. LEXIS 109996, 2013 WL 3990875, at *3. To satisfy this burden, the plaintiff's counsel 'is initially required to submit evidence supporting the hours worked and the rates claimed.' *Bilazzo*, 876 F. Supp. 2d at 458. 'Additionally, although the lodestar is presumed to yield a reasonable fee, district courts retain discretion to adjust the lodestar.' *Id.* (citation omitted).
>
> Plaintiff seeks to recover $2,632.50 in attorneys' fees, broken down as follows:
>
> (1) David Levin, Esq., who is described as a "**_Non-PA Partner_**" — 1.3 hours at $425 per hour, totaling $552.50;
>
> (2) Christian Rieger, Esq., who is described as a "*PA Partner*" — 1.1 hours at $425 per hour, totaling $467.50;
>
> (3) Paul Daniels, Esq., who is described as a "*PA Partner*" — 0.5 hours at $425 per hour, totaling $212.50;

---

[8] Senior Judge McVerry, the author of *Caplan*, heavily quotes Eastern District's Senior Judge Robreno's 2014 opinion listing the five (5) factor test.

(4) Jocelyn Hsiao, Esq., who is described as a "***Non-PA Associate***" — 3.9 hours at $250 per hour, totaling $975.00;

(5) Megan Feddor, paralegal — 0.7 hours at $125 per hour, totaling $87.50;

(6) Amy Catena, paralegal — 1.0 hours at $125 per hour, totaling $125;

(7) Aquanda Thomas, paralegal — 0.2 hours at $125 per hour, totaling $25;

(8) Sarah Heinz, law clerk — 0.3 hours at $125 per hour, totaling $37.50; and

(9) Katie Jezierny, legal assistant — 1.2 hours at $125 per hour, totaling $150.

ECF No. 8-4, at 2. Plaintiff also seeks to recover $400.00 in court costs, which, according to Plaintiff, constitutes the $400 filing fee paid by counsel on Plaintiff's behalf. In addition, Plaintiff seeks $73 to cover process server fees.

Before addressing whether the fees sought by Plaintiff's counsel are reasonable, the Court must address another issue that has come to mind. In particular, ***while reviewing the time entries submitted by Plaintiff's counsel, it came to light that the bulk of the work performed on Plaintiff's behalf was done by out-of-state attorneys — Ms. Hsiao and Mr. Levin of the Chicago-based firm, Upright Law, LLC — who are not admitted to practice in the Western District of Pennsylvania generally and did not seek to appear in this action pro hac vice***.[9] ***This raises the question: Can Plaintiff recover fees for work performed by Ms. Hsiao and Mr. Levin, even though they have not been admitted to practice in this Court?***

In assessing this issue, ***courts have drawn a distinction between when an out-of-state attorney acts in a "consulting" role and when he or she "appears," "actively participates," or "practices" in the matter. When doing the former, the attorney need not seek pro hac vice admission and can, without question, recover fees for services performed. See, e.g., Winterrowd v. Am. Gen. Annuity Ins. Co., 556 F.3d 815, 823 (9th Cir. 2009)*** (permitting plaintiff to recover fees for work performed by out-of-state attorney "because his conduct did not rise to the level of 'appearing' before the district court"). ***When doing the latter, pro hac vice admission is required, and the failure to seek such admission can result in a denial of fees.*** As Senior District Judge ***Eduardo C. Robreno of the Eastern District of Pennsylvania recently explained***,

From the various decisions considering whether an out-of-state attorney occupied the sort of "consulting" role that would allow for an award of attorney's fees despite the attorney's failure to seek pro hace vice admission in the local court, **a consistent list of relevant factors emerges . . . .** Where an out-of-state attorney's participation was limited to that of a

---

[9] Internal footnote omitted that simply states the attorneys are admitted in Illinois [not Pennsylvania].

consultant whose services are compensable despite lack of *pro hac vice* admission, that attorney likely:

**(1) refrained from direct client contact,**

**(2) refrained from contact with opposing counsel,**

**(3) did not sign or draft substantial portions of pleadings, especially the complaint,**

**(4) restricted his participation in the case to reviewing motions, drafting internal memos, and advising lead counsel, such that his work was supervised by, and ultimately "filtered" through the lead attorney,**

**(5) recorded only a modest number of hours on a case, relative to lead counsel and other admitted attorneys working on a case.**

*Gsell v. Rubin & Yates, LLC*, 41 F. Supp. 3d 443, 450 (E.D. Pa. 2014) (citations omitted). *See also Bilazzo*, 876 F. Supp. 2d at 464 (identifying similar factors).

Applied here, Ms. Hsiao appears to have been the only attorney who contacted Plaintiff, so the first factor weighs in favor of finding that she was not merely a "consulting" attorney. The second factor is not applicable here because Defendant failed to appear. With respect to the third factor, Ms. Hsiao and Mr. Levin appear to have been primarily responsible for drafting the Complaint, even though it was signed by Mr. Daniels and Mr. Rieger. Thus, this factor also weighs against finding that Ms. Hsiao and Mr. Levin were just "consulting" with Mr. Daniels and Mr. Rieger. As to the fourth factor, the work of Ms. Hsiao and Mr. Levin went far beyond simply reviewing motions, drafting memos, and advising "lead" counsel. If anything, it was the other way around. That is especially true for Ms. Hsiao, who did the bulk of the leg work on this case, speaking with Plaintiff and his mother and drafting the complaint. Meanwhile, up until the time the motion for default judgment was filed, Mr. Levin was "the apparent pilot guiding the course of the litigation." *Gsell*, 41 F. Supp. 3d at 451. Lastly, Ms. Hsiao and Mr. Levin worked a total 5.2 hours on this case, while Mr. Levin and Mr. Rieger worked just 1.6 hours combined. One would expect those numbers to be reversed if the Chicago attorneys were really just performing "consulting" roles. In sum, under the present circumstances, the Court finds that Ms. Hsiao and Mr. Levin appeared in this case and engaged in the practice of law before this Court. Accordingly, they were required to seek and obtain *pro hac vice* admission under LCvR 83.2(B).

Since they failed to do so, the Court will decline to award Plaintiff fees for any work they performed on his behalf. The 5.2 hours of work they performed will therefore be excluded from the lodestar calculation. See also *Martz v. PNC Bank, N.A.*, Civ. No. 06-1075, 2008 U.S. Dist. LEXIS 37264, 2008 WL 1994858 at *4 n.19 (W.D. Pa. May 5, 2008) ***(denying part of fee award for work performed by out-of-state attorneys who failed to seek pro hac vice admission)***. Additionally, the work performed by the legal support staff in this case appears to have been done under the supervision of Ms. Hsiao and Mr. Levin. Thus, fees for services they performed will also be disallowed. See *Gsell*, 41 F. Supp. 3d at 452 n.10."

9

*Caplan v. Premium Receivables LLC*, 2015 U.S. Dist. LEXIS 98843, *9 -*14 (W.D. Pa.).

(emphases added).

Applying the five factors to Attorney David Saponara who is neither admitted to practice in Pennsylvania nor admitted *pro hac vice* in the Western District of Pennsylvania, it is clear that he acted as far more than a "consultant" and therefore his fees should be disallowed. Applying the five *Caplan* factors, it is clear that Attorney Saponara is far outside the parameters that would qualify him as a "consultant":

**Factor 1:** Attorney Saponara's own time entries submitted in support of the Motion for Attorneys' Fees explicitly states that he engaged in calls with his firm's client (referred to as "Altium", "client", "Bill" or "Coluccio" – William Coluccio is the sole member of Defendant Altium (Coluccio Deposition, 5:12-25). *Caplan v. Premium Receivables LLC*, 2015 U.S. Dist. LEXIS 98843 (W.D. Pa.) (see block quote above for the five factors).

**Factor 2:** Attorney Saponara also had regular contact with opposing counsel in the form of both phone calls and e-mails. Attached as "**Exhibit D**" is a Declaration of undersigned counsel Thomas H. Chiacchio, Jr. regarding phone calls and with a sample of the e-mails between The Chiacchio Firm and Attorney Saponara. *Caplan*, 2015 U.S. Dist. LEXIS 98843, *12 -*13 (W.D. Pa.) (see block quote above for the five factors).

**Factor 3:** This factor is irrelevant and inapplicable because Attorney Saponara's firm was not involved in this litigation at the pleading stage, but took over for the appeal. *Caplan*, 2015 U.S. Dist. LEXIS 98843, *12 -*13 (W.D. Pa.) (see block quote above for the five factors).

**Factor 4:**   This factor also favors the conclusion that Attorney Saponara was far more than just a "consultant".  The court in *Caplan* made a particularly pertinent observation that is applicable to the case at bar wherein the court explained that the supposed "consulting" attorney in that case (from Chicago) actually spent far more hours on the litigation than the admitted attorneys: "Ms. Hsiao and Mr. Levin worked a total 5.2 hours on this case, while Mr. Levin and Mr. Rieger worked just 1.6 hours combined. ***One would expect those numbers to be reversed if the Chicago attorneys were really just performing "consulting" roles***." *Caplan* at *14 (emphasis added).  In the case at bar, according to Movant's own timesheets Non-Admitted Attorney Saponara billed $28,490.00 for **non-appellate work (more hours than "lead counsel" Paul Aloe)**.[10]   Just as the Court in *Caplan* held, if Attorney Saponara was a non-admitted "consultant", then "[o]ne would expect those numbers to be reversed…[when compared to admitted Attorney Aloe]" *Id*. at 14.

**Factor 5:**  Perhaps the most important and most damning factor under *Caplan* is that the attorney at issue (Attorney Saponara in the case at bar) ***should have "recorded only a modest number of hours on a case, relative to lead counsel [Attorney Aloe] and other admitted attorneys working on a case.***"  *Id*. at 12.

In conclusion, the Western District *Caplan* factors as adopted from the Eastern District's Senior District Judge Robreno, clearly show that Attorney Saponara was not a mere "consultant" and therefore because he neither was (nor *is* for that matter) a Pennsylvania admitted attorney nor admitted *pro hac vice* for his work that Defendant seeks to now have Bob and Linda Wall pay -- this request for Attorney Saponara should be denied.

---

[10] Attorney Saponara's total fees charged total $51,520.00.

11

C.  **This Court Should Not Award Attorneys' Fees for Time Entries That Lack Sufficient Detail to Allow Plaintiffs or This Court to Ascertain Reasonableness.**

The invoices that Defendant Altium filed with its Motion for Attorney's Fees include some entries so vague that the reasonableness of the fee cannot be determined and therefore should be excluded.

This Honorable Court specifically ordered that any motion for attorney's fees include "contemporaneously prepared *detailed* invoices." (ECF 156, ECF 159) (emphasis added). Application of the lodestar method requires sufficiently detailed invoice entries upon which "a neutral judge can make a fair evaluation of the time expended, the nature and need for the service, and the reasonable fees to be allowed." *Hensley v. Eckerhart*, 461 U.S. 424, 441 (1983).

However, Defendant's calculation of fees includes, for example, entries for:

- "Altium Group - phone William Coluccio" – 1.5 hours
- "Discussion with PA; review email." – 0.4 hours
- "Office conference." – 0.2 hours
- "Email." – 0.1 hours
- "Review numerous client emails" – 0.3 hours
- "Altium Group - phone W Coluccio" – 1 hours

(ECF 160-4).

These entries are generic, and lack sufficient detail to evaluate the nature of the service provided. It is unclear whether the substance of the phone calls or emails could have been communicated by support staff at a lower billing rate or should not be billable at all. Respectfully, Plaintiffs request the Court exercise its discretion and exclude all such vague and insufficient entries from Defendant's calculation of attorney's fees as detailed in the Spreadsheet attached to this Memorandum of Law as "**Exhibit B**".

D.  **Additional Issues that Undermine the Motion for Attorneys' Fees and Costs.**

It is worth noting that nowhere in the Motion it is alleged that Defendant Altium actually *paid* the fees charged by the law firms that represented Altium.  As stated in the Declaration submitted by Attorney Thomas H. Chiacchio, Jr., on more than one call with Attorney Paul Aloe, Attorney Aloe explained that Altium's William Coluccio (sole member of Defendant Altium) was a friend of Attorney Aloe's partner or, and Attorney Aloe would begin mumbling something at this point that sounded like "ex-partner" but was difficult for Attorney Chiacchio to hear. "**Exhibit D**", Declaration of Attorney Chiacchio at ¶7.  When combined with the averment in the motion to withdraw filed by Altium's original attorney, Michael Betts, that Altium had not paid $31,122.50 billed from Attorney Betts's firm, there is a serious question about what Altium has in fact or will ever in fact have to pay.  When those considerations are added to the astronomical single year increase in Attorney Saponara's hourly rate from $300 to $400 per hour and even Attorney Aloe's $50 increase from $550.00 to $600.00 (*see* ECF 161, Defendant's Memorandum of Law at 4), one cannot help but raise an eyebrow regarding the attorneys' fee award being sought.  At this annual rate of increase, Attorney Saponara (33% increase from $300 to $400) will be billing at a rate of $1,665.07 in just five years and he graduated from law school (St. John's Law School) in 2013 according to Attorney Aloe's Declaration at ¶22 (ECF 160-2).  Even when undersigned counsel began practicing law at Blank Rome after a Pennsylvania Supreme Court clerkship, never did his hourly rate jump by **33%** or anything close to that. "**Exhibit D**", Declaration of Attorney Chiacchio at ¶ 8.

Finally, Attorney Betts has failed to attach the engagement letter[11] from when he had his own firm and from his current firm and there is an inconsistency in his representations to this

---

[11] This absence is especially glaring in light of Attorney Betts' own argument regarding the importance of attaching fee agreements to a Motion for Attorney's Fees. *See* ECF 105, at 7.

13

Court regarding the rates that he charged. In Attorney Betts' Declaration in Opposition to Plaintiffs' Motion for Attorney's Fees, he claims that his hourly rate of $295 was charged to Altium while he was at Betts Law Office LLC, but that his rate increased to $350 an hour when he brought Defendant's representation over to Post & Schell. (ECF 105-3, at ¶5). Despite his declaration of charging Altium an hourly rate of $350 since April 2016, the invoices supplied in support of this Motion show hourly rates of $295 throughout the representation. (ECF 160-7 and ECF 160-8). This Court previously had to warn Attorney Betts about candor with the Court in its Order dated wherein the Court specifically stated, "We also remind parties opposing a motion of their counsel's duty of candor." (ECF 76)  In addition, Attorney Aloe has quoted this Court as describing the Plaintiff's request to freeze the bank accounts of Altium as "ignorant" with respect to whether an appellate court granting oral argument or not indicates a better chance of affirmance. (ECF 160-2, p. 4). It is worth noting that when undersigned counsel received a call from Attorney Aloe prior to the telephonic hearing on the motion, Attorney Aloe only raised concern over the inclusion of the son, Jeffrey Coluccio, of Altium's sole member William Coluccio being including in the motion.  "**Exhibit D**", Attorney Chiacchio Declaration, ¶ 9.  This was when it came to light that Altium had drained its bank accounts while the appeal was pending (**and _had not posted a simple bond_ that would have eliminated the need for Plaintiffs to file the motion asking this Court to stop the dissipation of assets to satisfy a judgment)** and had created a new business entity to conduct business.  Moreover, after this Court entered judgment in Plaintiff Bob and Linda Wall's favor, Attorney Chiacchio raised the concern of Defendant Altium filing for bankruptcy. Attorney Aloe told Attorney Chiacchio that Attorney Aloe would know if Altium was considering bankruptcy because his firm practices in bankruptcy.  Now the timesheets from Attorney Aloe's firm at October 20, 2017 show that his

firm was in fact advising Defendant Altium on bankruptcy. These issues all undermine the submissions by both Attorney Betts and Attorney Aloe in support of their motion for fees and costs.

### III. CONCLUSION

Plaintiffs Robert and Linda Wall, Husband and Wife, respectfully request that this Honorable Court deny Defendant's Motion and grant such other relief under the law, equity or otherwise that this Court deems appropriate.

Respectfully Submitted,

Dated: June 4, 2019

/s/ Thomas H. Chiacchio, Jr., Esquire
Thomas H. Chiacchio, Jr., Esq. (PA ID 83197)
**THE CHIACCHIO FIRM**
One Commerce Square
2005 Market Street, Ste 840
Philadelphia, PA 19103
(215) 907-7766
(215) 907-7903 (direct)
(215) 907-7902 (facsimile)
*chiacchio@thclaw.com*

*Attorney for Plaintiffs Robert Wall and
Linda Wall, Husband and Wife*