## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ROBERT WALL and** | **: CIVIL ACTION** |
| **LINDA WALL** | : |
| | : |
| **v.** | **: NO. 16-1044** |
| | : |
| **ALTIUM GROUP, LLC** | : |

## MEMORANDUM

**KEARNEY, J.**                                                            **July 12, 2019**

Individuals purchasing complicated financial investments through investment companies may be aware of their need to carefully examine the governing agreements. But they may overlook language as to attorney's fees incurred in disputes about these agreements. These agreements may require a party unsuccessful in challenging the agreement to pay the reasonable attorney's fees and costs for the other party. We today address husband and wife investors' challenges to an investment company's attorney's fees and costs incurred by the investment company in defeating their lawsuit alleging a breach of the governing agreement. The investors raise specific challenges to the invoiced time and costs. Our role is to focus on the investors' specific challenges to the claimed fees and costs and not *sua sponte* approve or strike unchallenged time or expense. We must be mindful of the parties' contractual obligations and review time entries to ensure they specifically identify compensable work under the parties' agreement. After careful review of the investor's objections, we sustain the objections in part and enter judgment today under the parties' agreement in favor of the investment company requiring the investors pay reasonable attorney's fees of $90,296.50 and costs of $1,866.73.

## I.    Background[1]

Robert and Linda Wall invested in a structured settlement annuity arranged by Altium Group, LLC ("Altium") which would then find a suitable structured settlement sold by another company. The Walls and Altium signed a Master Structured Settlement Receivable Purchase and Sale Agreement and Non-Circumvention Agreement ("Master Agreement") governing the terms and conditions of payments between the parties under New Jersey law. The Master Agreement included an agreement to pay the attorney's fees and costs incurred by either party in a case filed to enforce the Master Agreement. As a condition of the Master Agreement, the Walls paid $152,833 to Altium which, in turn, purchased from Corona Capital, LLC the right to the structured settlement. The Walls never received a single payment from the deal because a Florida state court vacated its previous approval of the transfer of the structured settlement from Corona Capital to the Walls.

The Walls sued Altium and Corona Capital. We dismissed Corona Capital from the case for lack of personal jurisdiction, leaving Altium as the sole defendant. The Walls' claims for breach of contract and unjust enrichment against Altium proceeded through discovery and, after the parties filed cross-motions for summary judgment on the breach of contract claim, we entered summary judgment in favor of the Walls. We dismissed the unjust enrichment claim as moot by finding an existing contract.

Altium appealed. Our Court of Appeals reversed our order granting the Walls summary judgment and denying Altium's summary judgment on the breach of contract claim. The court remanded, directing us to address the Walls' unjust enrichment claim.

On remand, the parties filed cross-motions for summary judgment on the unjust enrichment claim. We granted summary judgment in favor of Altium and denied the Walls' motion for

2

summary judgment.[2]

## II.    Analysis

As the Walls agreed in the Master Agreement, "[i]n any action to enforce this Agreement, the prevailing party shall be awarded all arbitration costs or court costs and reasonable attorney's fee's incurred. Additionally, attorney's fees incurred in enforcing any judgment are recoverable as a separate item, and this paragraph regarding post-judgment attorney's fees shall be severable from the other provisions of this Agreement, shall survive any judgment, and shall not be deemed merged into any judgment."[3]

Altium now seeks $141,326.50 in attorney's fees and $11,883.11 in costs as the prevailing party. Its calculation relies on the lodestar formula of multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. As for costs, Altium contends court reporting services constitute most of its costs, with printing costs for the appeal, and "ordinary disbursements" such as mailing, legal research fees, and service costs accounting for the remainder.

The Walls do not argue the merits of the Master Agreement or whether Altium prevailed on all claims against it. Instead, they argue Altium is not entitled to attorney's fees or costs (1) relating to appellate work; (2) for work performed by attorneys not admitted to the Pennsylvania bar or not admitted *pro hac vice* to the United States District Court for the Western District of Pennsylvania; (3) for time entries lacking sufficient detail to allow us to determine reasonableness of the fees; and (4) "additional issues" undermining Altium's motion including whether Altium actually paid its attorney's fees, the increase in one of its attorney's hourly rate in one year, and the failure to attach the engagement letter with its previous counsel, Attorney Michael Betts.

3

## A. We apply the parties' choice of New Jersey law governing an award of attorney's fees.

Under the Master Agreement, New Jersey law applies to the "validity, construction, and enforcement of this Agreement." Although New Jersey "disfavors the shifting of attorneys' fees," its Supreme Court allows "a prevailing party [to] recover those fees if they are expressly provided for by statute, court rule, or contract."[4] Where "fee-shifting is controlled by a contractual provision, the provision should be strictly construed in light of our general policy disfavoring the award of attorneys' fees."[5]

In determining the reasonableness of attorney's fees, "the threshold issue 'is whether the party seeking the fee prevailed in the litigation.'"[6] The party seeking fees "must establish that the 'lawsuit was causally related to securing the relief obtained; a fee award is justified if [the party's] efforts are a necessary and important factor in obtaining the relief.'"[7] Here, there is no dispute Altium prevailed on all the claims against it and the Master Agreement provides "the prevailing party shall be awarded ... court costs and reasonable attorney's fees incurred."

To determine the amount of an attorney's fee award, New Jersey courts use the "lodestar" formula; the number of hours reasonably expended multiplied by a reasonable hourly rate.[8] New Jersey Rule of Professional Conduct 1.5(a) "commands that '[a] lawyer's fee shall be reasonable' in all cases, not just fee-shifting cases,' and requires the courts to consider" eight factors: "(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation,

4

and ability of the lawyer or lawyers performing the services; (8) whether the fee is fixed or contingent."[9] "The computation of the lodestar mandates that the trial court determine the reasonableness of the hourly rate of 'the prevailing attorney in comparison to rates for similar services by lawyers of reasonably comparable skill, experience, and reputation, in the community.'"[10]

Under New Jersey law, we must consider Rule 1.5(a)'s factors to determine the reasonableness of the hourly rate and time expended for the lodestar calculation. Although the Walls mention the Rule 1.5(a) factors in a footnote, they do not analyze or apply the factors to this case.[11] Altium does not address the application of Rule 1.5(a)'s factors.

While the lodestar figure is presumed to be the reasonable fee, we have discretion to make adjustments.[12] But we may not reduce an award *sua sponte*. We may only reduce an application for attorney's fees "in response to specific objections made by the opposing party."[13] Once an opposing party makes a specific objection to requested fees, "the burden is on the prevailing party to justify the size of its request."[14]

## B. Attorney's fees and costs incurred by Altium.

As the party seeking attorney's fees, Altium "has the burden to prove that its request … is reasonable."[15] The Walls, opposing an award of fees, "then has the burden to challenge, by affidavit or brief with sufficient specificity to give fee applicants notice, the reasonableness of the requested fee."[16]

Altium contends the hours its counsel spent in defense of this action over a two-and-a-half year period and the hourly rates charged by its counsel are reasonable. Two attorneys represented Altium in the course of this litigation: Michael J. Betts of Michael J. Betts LLC, and later Post & Schell, P.C., from June 2015 through June 2017; and Paul H. Aloe and David Saponara of Kudman

5

Trachten Aloe LLP from June 2017 to the present.

## 1. Attorney's fees and costs for services of Attorney Betts.

Attorney Betts swears Altium retained him in June 2015 to represent it in this matter originally filed in Pennsylvania state court.[17] In June 2016, Attorney Betts joined the law firm Post & Schell, P.C. as a principal bringing his representation of Altium in this matter with him.[18] Attorney Betts swears to his hourly rate of $295 for the entirety of his representation of Altium both at his own firm and at Post & Schell.[19] He did not provide the fee agreements with Altium for services from the Betts Law Office or Post & Schell. We have no document describing an agreement to pay these fees.

Attorney Betts swears his work in this action includes all "pre-appeal proceedings ... beginning with the commencement of the action in Pennsylvania state court in June 2015, continuing through the removal of the action to this Court in July 2016, and ending with Altium's appeal to the Third Circuit from the judgment that this Court entered" in favor of the Walls in May 2017.[20] This work included the preparation of two motions to dismiss, a motion for judgment on the pleadings, document productions, depositions, a motion for summary judgment, motion to reduce the amount of damages, and opposition to the Walls' motion for attorney's fees and costs.[21]

Attorney Betts swears Altium incurred a total of $518.00 in attorney's fees and $5.12 in costs for work performed at his own firm before joining Post & Schell. Altium attaches an invoice from Betts Law Office LLC.[22] Mr. Betts swears Altium incurred $35,688.50 in attorney's fees and $1,416.34 in costs for his work performed at Post & Schell.[23] In total, Attorney Betts declares, Altium incurred a $36,206.50 in attorney's fees and $1,421.46 in costs for services he rendered both at Betts Law Office and Post & Schell.[24] While it appears Attorney Betts billed only 1.4 hours while at his firm not 2.1 hours, with the difference billed by a Kevin Elrod and we lack a

6

sworn declaration regarding Attorney Elrod's work or hourly rate, and Attorney Betts includes hours attributed to Adriane Ware, a paralegal at Post & Schell,[25] the Walls do not object to these time entries and we cannot *sua sponte* challenge the bill for these issues.

## 2. Fees and costs for services of Kudman Trachten Aloe LLP.

In late June 2017, Altium retained attorney Paul H. Aloe of Kudman Trachten Aloe LLP to file an appeal from our judgment order.[26] We are provided with the fee agreement between Attorney Aloe's firm, located in New York City, and Altium.[27]

Under their agreement, Altium paid the firm at hourly rates of $550 for partners and between $300 and $475 for associates, subject to increases under the firm's regular practices.[28] Attorney Aloe swears the total fees for his services and those of senior associate David Saponara from June 2017 to February 2019 amount to $105,120 and $10,461.65 costs.[29] Attorney Aloe's hourly rate in June 2017 began at $550 and increased in February 2019 to $600, and Attorney Saponara's hourly rate began at $300 and increased in February 2019 to $400 per hour.[30]

Attorney Aloe swears Altium retained him and his firm to appeal from our judgment order and, in connection with the appeal, prepared initial filings and participated in the Third Circuit mediation program.[31] After unsuccessful mediation, Attorney Aloe and Attorney Saponara prepared the briefing in the appeal.[32] During the appeal, the Walls attempted to enforce its judgment against Altium in New Jersey state court, issuing discovery in aid of execution to which Altium responded.[33] The Walls additionally filed an emergency motion for temporary restraining order and preliminary injunction against Altium from transferring any of its assets, triggering our scheduling of an October 30, 2018 hearing.[34] Attorney Aloe and his firm expended time preparing for the hearing on the Walls' motion.[35] After the Court of Appeals found in favor of Altium and remanded the matter, Attorney Aloe moved for summary judgment, opposed the Walls' cross-

7

motion for summary judgment, and prepared a reply to support Altium's motion.[36]

Attorney Aloe swears his fees and costs incurred in the successful defense are reasonable and "represents an efficient defense of Altium in all phases of this litigation."[37] Attorney Aloe points to the Walls' Motion for attorney's fees and costs filed in April 2017, after our order granting them summary judgment, seeking $158,435.50 in attorney's fees and $4,309.03 in costs for services performed on behalf of the Walls between June 2014 and April 2017.[38] Attorney Aloe argues Altium's fees in defense of this entire action is less than the attorney's fees and costs sought by the Walls—which did not include the appeal, the Walls' judgment enforcement efforts, or the motions for summary judgment on remand—in their motion for fees filed after we entered summary judgment in their favor in March 2017.[39]

## C. We sustain the Walls' objections to Altium's fees and costs in part.

Having reviewed Altium's attorney invoices, the Walls argue Altium is not entitled to attorney's fees or costs for limited reasons: (1) relating to appellate work; (2) for work performed by attorneys neither admitted to the Pennsylvania Bar nor admitted *pro hac vice* to the United States District Court for the Western District of Pennsylvania; (3) for time entries lacking sufficient detail to allow us to determine reasonableness of the fees; and (4) "additional issues" undermining Altium's motion including whether Altium actually paid its attorney's fees, the increase in hourly rates at Attorney Aloe's firm, and the failure to attach Altium's fee agreement with Attorney Betts. We address each objection in turn.

### 1. Fees relating to appellate work are excluded for filing to be submitted to the Court of Appeals under Local Appellate Rule 108.1.

The Walls first argue Altium is not entitled to recover fees relating to its appeal because Third Circuit Local Appellate Rule 108.1 ("L.A.R. 108.1") requires it to apply for fees there, not here. Local Appellate Rule 108.1(a) provides "[e]xcept as otherwise provided by statute, all

8

applications for an award of attorney's fees and other expenses relating to a case filed in this court, regardless of the source of authority for assessment, must be filed within 30 days after the entry of this court's judgment, unless a timely petition for panel rehearing or rehearing en banc has been filed, in which case a request for attorney's fees must be filed within 14 days after the court's disposition of such petition. Such application must be filed with the clerk in the time set forth above whether or not the parties seek further action in the case or further review from any court."

The Walls argue L.A.R. 108.1 "makes sense" because our Court of Appeals is in a better position to evaluate the amount of time spent on appellate work, relying on *Jurinko v. Medical Protective Co.*, a 2009 decision from the United States District Court for the Eastern District of Pennsylvania.[40] In *Jurinko*, plaintiffs brought a bad faith action against Medical Protective Co., an insurer. The Jurinkos prevailed in a state court medical malpractice action against Medical Protective's insured and, after the state court litigation, took an assignment from the insured of his bad faith claim against Medical Protective.[41] A jury found in favor of the Jurinkos and awarded them compensatory and punitive damages. Both the Jurinkos and Medical Protective appealed. Our Court of Appeals reduced the amount of the punitive damages awarded to the Jurinkos, entered judgment, and denied rehearing. The Jurinkos then filed a motion for supplemental attorney's fees and interest in the district court.[42]

Part of the Jurinkos' motion sought attorney's fees for work on appeal.[43] The district court denied appellate attorney's fees, citing Third Circuit L.A.R. 108.1 and 108.2. Local Appellate Rule 108.2 provides "[w]ritten objections to an allowance of attorney's fees, setting forth specifically the basis for objection, must be filed within 10 days after service of the application. Thereafter, the court may, when appropriate, either refer the application to the district court or agency where the case originated or refer the application to a master."

9

The district court reasoned the language of L.A.R. 108.2 supports a finding L.A.R. 108.1 "requires appellate attorney fee applications to be filed with the Third Circuit and not the district court ...."[44] Persuaded by the language of L.A.R. 108.2 describing the circumstances where fee applications may be referred by the court of appeals to the district court, the district court concluded petitions to recover appellate attorney's fees must be filed under Rule 108.1.[45] Because the Jurinkos filed their appellate fee application in the district court, and not the court of appeals as required by L.A.R. 108.1, the court denied the request for appellate attorney's fees.[46]

In support of its reasoning, the district court cited cases from our Court of Appeals and district courts in this Circuit t "reflect[ing] the proper procedure by which an appellate counsel fee request may be determined by a district court, i.e. the process contemplated in L.A.R. Misc. 108.2, whereby such fee application is made to the circuit court and that court remands the matter to the district court."[47] In those cases, the party seeking fees for appellate work first timely applied to the Court of Appeals which then remanded or referred consideration of those fees to the district court.

Altium replies *Jurinko* is factually and procedurally distinguishable.[48] In *Jurinko*, Altium points out, the district court already awarded attorney's fees, costs, and interest to the Jurinkos at the time the parties cross-appealed. After the court of appeals denied the parties' cross-appeals (with the exception of a reduction in the punitive damages award), the Jurinkos filed with the district court a supplemental motion for attorney's fees related to post-trial motions and appellate work. Altium argues the court of appeals in *Jurinko* did not remand the action to the district court making it different from this case where our Court of Appeals reversed our order granting summary judgment to the Walls on the breach of contract claim and remanded the action to us for further proceedings on the Walls' unjust enrichment claim.

Because of the remand in this action, argues Altium, it could not have properly moved for its attorney's fees and costs until we resolved the unjust enrichment claim. It argues our determination of the unjust enrichment claim would inform the extent of its status as the prevailing party, and speculates if it had submitted a motion for fees in our Court of Appeals, the Walls "unquestionably would have argued that the application was premature because whether and to what extent Altium was the prevailing party for the purposes of ... the Master Agreement could not be ascertained until this Court resolved the parties' cross-motions for summary judgment on the unjust enrichment claim.[49] It further argues it would have been required, in any event, to file a motion with us to recover fees and costs incurred for pre- and post-appeal services resulting in multiple motions both here and in our Court of Appeals. Altium argues this creates an inefficient procedure "federal courts are loathe to promote."[50]

We disagree with Altium and are not persuaded by its argument to ignore L.A.R. 1081 requiring "*all applications* for an award of attorney's fees and other expenses relating to a case *filed in this court* ... *must be filed* within 30 days after the entry of this court's judgment ..." and "*must be filed* ... whether or not the parties seek further action in the case or further review from any court."[51] After filing an application for attorney's fees and costs with the court of appeals, L.A.R. 108.2 provides the court of appeals "may, when appropriate, either refer the application to the district court or agency where the case originated or refer the application to a master."

We find this unambiguous language contemplates a situation where, as here, our Court of Appeals issues its ruling and remands to the district court for further proceedings on unresolved issues. In such a case, our Court of Appeals may refer the appellate fee application to the district court. But the application must be made to the court of appeals in the first place. We find no authority, and Altium provides us with none, allowing fee applications for appellate work to be

11

filed in the district court in the first instance—sidestepping L.A.R. 108.1—simply because the matter is remanded to the district court. The cases cited by Altium, and the district court in *Jurinko*, cut against Altium's argument. For example, in *Planned Parenthood of Central New Jersey*, the plaintiffs, who prevailed both in the district court and the court of appeals, filed a motion with the court of appeals to remand for consideration of appellate fees to the district court or extend the time for plaintiffs to apply for fees [52] Addressing a timeliness challenge to the fee application for appellate work, the court of appeals concluded "[t]he motion filed by the plaintiffs, seeking an extension or remand of the application for appellate fees, requested that we remand to the District Court so that the issue of fees and costs for appellate work could be 'considered with—and on the same schedule as—the issue of fees and costs for trial work.' Since the motion requested the remand, on the same schedule as the issue of fees for trial work, which we granted, the logical interpretation of the order granting the remand is that it granted the motion to file a single fee request all on one schedule. Such an order is undoubtedly within our power."[53] Contrary to Altium's argument, this case does not support its position a fee application for appellate work need not be filed in the first instance with our Court of Appeals. The plaintiffs in *Planned Parenthood* filed a motion with the court of appeals asking its petition for appellate attorney's fees and costs be remanded to the district court for consideration of all fees "on one schedule." Altium did not do so here. Similarly, in both *Barnes Foundation*[54] and *Whiteland Woods*,[55] our Court of Appeals remanded to the district court fee applications for appellate work.

Altium chose to not apply for its attorney's fees and costs for appellate work to our Court of Appeals as required by L.A.R. 108.1 or file a motion there to extend the time within which to file its application there. It could have done so. We cannot find a basis to excuse its choice not to comply with L.A.R. 108.1 either in the language of the rule itself or in the case law.

12

We deny all attorney's fees and costs related to appellate work with a few exceptions. The Walls calculate Altium's attorney's fees relating to appellate work by Attorney Aloe and his firm amount to $45,735.00 and its costs from Post & Schell and Kudman Trachten Aloe, LLP amount to $10,016.38 and both should be excluded from Altium's demand.[56]

The Walls object to appellate work performed by Attorney Betts consulting with Altium before filing its Notice of Appeal on June 8, 2017. The Walls object to Attorney Betts's time billed to appellate work:[57]

| Date | Attorney | Description | Hour/Rate | Amount |
|------|----------|-------------|-----------|--------|
| 5/31/2017 | Betts | Telephone conference with W. Coluccio re potential appeal | .5/$295 | $147.50 |
| 6/1/2017 | Betts | Telephone conference with W. Coluccio re appeal and potential settlement offer | .3 | $88.50 |
| 6/5/2017 | Betts | Conference call re settlement; pre-call with W. Coluccio re settlement call with plaintiff's counsel; draft notice of appeal | 1.1 | $324.50[58] |
| 6/8/2017 | Betts | Telephone conference with W. Coluccio re potential settlement; revise, finalize and file notice of appeal | .8 | $236[59] |
| **Total** | | | **2.7** | **$796.50** |

These tasks pertain to Attorney Betts's time conferencing with Mr. Coluccio regarding a potential appeal and possible settlement all of which occurred before Altium filed its Notice of Appeal. The Walls offer no other objection to Attorney Betts's time billed to these tasks. We deny the Walls' objection and allow Attorney Betts's fees for these tasks.

The Walls additionally seek to exclude time attributed to Altium's motion to dismiss based on a forum selection clause which we denied. Our Court of Appeals affirmed our decision on the forum selection clause. Accordingly, the Walls ask we exclude this time from Altium's requested fees because it is not the "prevailing party" as to this discrete issue.[60] We can identify only one entry based on this objection; an October 17, 2016 entry by Attorney Betts of 1.8 hours in the amount of $531 to "prepare and final motion to dismiss amended complaint and brief in support

13

(revising previously filed documents to address amended complaint rather than original complaint); update legal research to determine whether there is any recent case law applicable to motion to dismiss."[61] We disagree with the Walls. They agreed to pay the fees incurred by Altium. Altium is the prevailing party. We will not parse through the extensive invoice to find which of Altium's arguments succeeded before us. We especially will not do this forensic work for the Walls when they do not cite a basis for us to strike time entries. Altium prevailed under the Master Agreement.

## 2. We overrule the Walls' objection to Attorney Saponara's work because he is not admitted to the Pennsylvania Bar or admitted *pro hac vice* in this District.

The Walls next object to all work performed by David Saponara, a senior associate at Attorney Aloe's New York law firm, because he is neither admitted to the Pennsylvania Bar nor admitted *pro hac vice* in this case.[62] The Walls rely exclusively on *Caplan v. Premium Receivables, LLC*,[63] arguing it is "well-established law" Altium may not recover attorney's fees for a non-admitted attorney unless the attorney acted as a "consultant."

In *Caplan*, the district court addressed a motion for attorney's fees allowed by statute. Before determining the reasonableness of the fees, the district court *sua sponte* raised the issue of whether the plaintiff could recover attorney's fees for work performed by two out-of-state attorneys not admitted to practice in this District.[64] The district court explained the distinction between non-admitted attorneys acting in a "consulting" role verses "appear[ing]", "actively participat[ing]", or "practic[ing]" in the matter.[65] A non-admitted attorney who acts in a "consulting" capacity need not seek *pro hac vice* admission and can "without question, recover fees for services performed."[66] Conversely, a non-admitted attorney who "appears," "actively participates," or "practices" must obtain *pro hac vice* admission "and the failure to seek such

14

admission can result in a denial of fees."[67]

The district court relied on a five-factor test to determine whether a non-admitted, out-of-state attorney acted in a "consulting" role allowing for an award of attorney's fees despite the failure to seek *pro hac vice* admission.[68] An out-of-state attorney's role is limited to a "consultant"—and thus compensable despite non-admission—where he "(1) refrained from direct client contact; (2) refrained from contact with opposing counsel; (3) did not sign or draft substantial portions of pleadings, especially the complaint; (4) restricted his participation in the case to reviewing motions, drafting internal memos, and advising lead counsel, such that his work was supervised by, and ultimately 'filtered' through the lead attorney; [and] (5) recorded only a modest number of hours on a case, relative to lead counsel and other admitted attorneys working on a case."[69]

The Walls contend Attorney Saponara acted "far outside the parameters that would qualify him as a 'consultant'" and his fees should be disallowed. Reviewing the bills from Attorney Aloe's firm, the Walls argue Attorney Saponara's time entries show his active participation under the five-factor test: he engaged in telephone calls with the client, William Coluccio, sole member of Altium; he had regular contact with opposing counsel by telephone and email; he billed $28,490.00 for non-appellate work and more hours than lead counsel Attorney Aloe; and his billed time is more than "a modest number of hours of a case relative to [Attorney Aloe] and other admitted attorneys working on [the] case."[70]

Altium replies *Caplan*, and the cases it relies on, are distinguishable because the non-admitted, out-of-state attorneys seeking fees were members of law firms separate from local counsel representing the prevailing plaintiffs.[71] In contrast, argues Altium, Attorney Saponara is an associate in Attorney Aloe's firm, Attorney Aloe supervised all legal work performed by

15

Attorney Saponara, and Attorney Aloe served as lead counsel at all times, signed all filings, and appeared before us during telephonic hearings. Altium cites cases from other federal courts refusing to reduce fees for out-of-state attorneys where, for example, lead counsel supervised work of out-of-state counsel and were in constant communication about the case, out-of-state attorney did not appear before the district court to argue or sign briefs, and where an out-of-state attorney did not represent herself as an attorney of record or appear before the court.[72]

Even if the five-factor test applied, Altium argues the Walls misrepresent the record specifically the second factor—regular contact with opposing counsel. The Walls submit the Declaration of its counsel, Thomas H. Chiacchio, Jr. swearing to phone calls and emails from his firm with Attorney Saponara. Altium argues Attorney Chiacchio does not provide details regarding phone calls with Attorney Saponara. Altium points to the emails attached to Attorney Chiacchio's Declaration showing the majority of Attorney Saponara's communications were with Colleen McCafferty, an attorney at Attorney Chiacchio's firm and who is not admitted to practice in Pennsylvania and who did not seek *pro hac vice* admission in this case, and David Wisniewski, an attorney representing the Walls from another law firm and who do not seek *pro hace vice* admission.[73] Notably, according to Altium, the Walls moved for attorney's fees including those of Attorney Wisniewski who is not admitted to practice in this district. Altium argues the emails to and from Attorney Saponara reflect work such as forwarding documents, communicating conference call dial-in numbers, and facilitating and responding to requests for extensions of time to submit and respond to motions. It is more cost effective, argues Altium, to assign a more junior attorney rather than a partner to handle these type of tasks. The Walls would have complained if Attorney Aloe performed these tasks at his higher rate.

Analyzing the case law, we find *Caplan* and the cases it relies on are distinguishable. The

16

*Caplan*, *Gsell*, and *Bilazzo*, cases all involved fee-shifting under the Fair Debt Collection Practices Act and, in each case, the prevailing plaintiffs sought attorney's fees for work performed by non-admitted, out-of-state counsel where local counsel appeared of record.

The *Bilazzo* case, relied on by both district courts in *Caplan* and *Gsell*, involved a motion for attorney's fees rendered by non-admitted attorneys who performed most of the work on the case. There, the district court found two out-of-state, non-admitted attorneys "were in fact lead counsel" with local counsel taking a "secondary" role.[74] It appears the out-of-state attorneys in *Bilazzo* solicited the client and then retained local counsel. Reviewing the record, the district court concluded local counsel "served in only a minimal capacity in this case" including the complaint naming plaintiff's representation through out-of-state attorneys and the motion for fees brought by plaintiff through his out-of-state attorneys; and "repeated representations [the out-of-state, non-admitted law firm] represents Plaintiff are another clear indication to the Court that [out-of-state, non-admitted attorneys] were in fact lead counsel in this case and not merely 'consulting' with [local counsel]."[75] Applying the five-factor test it developed to determine whether an out-of-state attorney functions as a "consulting" attorney, the district court concluded under the circumstances of the case, the attorneys were more than simply "consultants."

Motivated by its concern for the court's power to control admission to its Bar and discipline attorneys who appear before it, the district court found the failure to "properly seek admission *pro hac vice* in this case is troublesome to the Court because it essentially disregards the Court's well established power to control admission to its own bar."[76] We find no such concern here.

Attorney Aloe is admitted to the Pennsylvania Bar and admitted to practice in this District. Attorney Saponara, as an associate in Attorney Aloe's firm, performed legal services at Attorney Aloe's direction and under his supervision. Attorney Aloe signed all filings. We are not concerned

with an out-of-state attorney attempting to sidestep our power to discipline attorneys and control admission to the Bar by failing to apply for *pro hac vice* admission.

We deny the Walls' objection to Attorney Saponara's fees based on his admission status and request we exclude his fees from the lodestar calculation.

### 3. Time entries lacking sufficient detail to determine reasonableness of fees.

The Walls object generally to Altium's requested fees for time entries lacking sufficient detail to determine reasonableness. For example, the Walls point to entries from Attorney Aloe's firm describing work as: "Altium Group – phone William Coluccio" for 1.5 hours; "Discussion with PA; review email" for .4 hours; "Office conference" for .2 hours; "Email" for .1 hours; "Review numerous client emails" for .3 hours.[77] In all, the Walls object to 11.2 hours totaling $6,085 in fees as "vague, no description of specific work performed."[78] Altium does not reply to the Walls' objection.

| Date | Attorney | Time | Hourly rate[79] | Description |
|------|----------|------|------|-------------|
| 6/2/2017 | Aloe | 1.5 | $825 | Altium Group – phone William Coluccio |
| 6/26/2017 | Aloe | 1.0 | $550 | Altium Group – Meeting with W. Coluccio |
| 6/30/2017 | Aloe | .4 | $220 | Altium Group – phone W. Coluccio |
| 7/6/2017 | Aloe | .3 | $165 | Altium Group – Phone Betts concerning case |
| 7/25/2017 | Aloe | .6 | $330 | Altium Group – Phone W. Coluccio, review material from Bill for mediation statement. |
| 8/29/2017 | Aloe | 1.2 | $660 | Altium Group – Client meeting (pre-mediation) |
| 9/22/2017 | Aloe | .3 | $165 | Altium Group – Phone WC concerning mediator call |
| 10/9/2017 | Aloe | .1 | $55 | Altium Group – Phone W. Coluccio |
| 10/19/2017 | Aloe | 1.1 | $605 | Altium Group – Further phone Bill and Jeff concerning same subject |
| 10/19/2017 | Stuart Kudman | .4 | $220 | Office conference; discussion with client |
| 10/25/2017 | Aloe | .1 | $55 | Altium Group – Attention to |

18

|            |         |           |          | substitution of counsel at direct court level [sic] |
|------------|---------|-----------|----------|-----------------------------------------|
| 11/14/2017 | Aloe    | .3        | $165     | Altium Group – Review memo from client  |
| 5/30/2018  | Aloe    | .1        | $55      | Altium Group – letter to D. Wisniewski  |
| 10/30/2018 | Aloe    | .3        | $165     | Phone Thomas Chiacchio                   |
| 10/30/2018 | Aloe    | .3        | $165     | Review numerous client emails            |
| 1/14/2019  | Aloe    | .5        | $275     | Altium-phone with plaintiff's counsel    |
| 1/14/2019  | Aloe    | .7        | $385     | Altium – Court confr, client phone after  |
| 1/14/2019  | "ESC"[80] | 1.0     | $425[81] | Conference with courts re vacating judgment. Prepare consent order. Conference with PA re same.[82] |
| 3/14/2019  | Aloe    | 1.0       | $600     | Altium Group – Phone W. Coluccio         |
| **Total**  |         | **11.2**  | **$6,085** |                                        |

We agree with the Walls on the time entries lacking specificity. We cannot find time entries are reasonable if we do not know what the attorneys did for the client. Attorneys need to contemporaneously bill time mindful of a client's review or, in a case with fee-shifting under a contract, a court's analysis. We cannot compel the Walls to pay for time which Altium's attorneys did not properly describe. However, we find four time entries sufficiently described totaling $810.[83] The Walls' obligation to pay reasonable fees based on the vagueness objection is $810.00. The Walls are not required to pay for $5,275 in time without sufficient description.

### 4. With one limited exception, we deny the Walls' objections to Altium's motion based on "additional issues."

The Walls raise "additional issues" they contend "undermine" Altium's motion for attorney's fees and costs: (1) "there is a serious question about what Altium has in fact or will ever in fact have to pay" its legal fees; (2) an "astronomical single year increase" in Attorney Aloe's and Attorney Saponara's hourly rate; (3) Attorney Betts failed to attach his engagement letter with Altium; and (4) Attorney Aloe's firm advised Altium on bankruptcy. We reject all of the Walls' arguments except for time billed by Attorney Saponara at the Aloe firm attributed to advising Altium on bankruptcy.

19

## *Altium incurred attorney's fees and costs.*

Attorney Chiacchio swears "on more than one phone call" with Attorney Aloe, Attorney Aloe mentioned his client, Mr. Coluccio the sole member of Altium, is a friend of Attorney Aloe's partner or, perhaps, "ex-partner."[84] Attorney Chiacchio is unsure because Attorney Aloe's "mumbling" made it difficult for him to hear.[85] The Walls also point to Attorney Betts's motion to withdraw as counsel in October 24, 2017 where he represented Altium failed to pay Post & Schell's attorney's fees and costs accrued through June 8, 2017.[86] Apparently, the combination of a possible friendship between Mr. Coluccio and a partner or ex-partner of Attorney Aloe as well as a motion filed over twenty months ago creates a "serious question" of whether Altium paid, or ever will pay, its legal fees.

Altium replies both Attorney Aloe and Attorney Betts submitted Declarations swearing Altium actually incurred $105,120.00 in attorney's fees, $2,527.66 in costs for services rendered by the Kudman Trachtman Aloe law firm, $,7933.99 in costs to vendors for court reporting and appellate printing services, and $36,206.50 in attorney's fees and $1,421.46 in costs for services rendered by Attorney Betts both at his own firm and after joining Post & Schell.[87]

The Walls do not dispute Altium incurred an obligation. Under the Master Agreement, the Walls agreed to pay reasonable fees "incurred." The Master Agreement did not require the fees be "paid." There is a difference in incurring an obligation and paying an obligation. Under New Jersey law, "[a] basic tenet of contract interpretation is that contract terms should be given their plain and ordinary meaning."[88] *"Black's Law Dictionary* defines 'incur' as 'to suffer or bring on oneself (a liability or expense).'"[89] Our Court of Appeals found this definition "consistent with the Tax Court's statement '[f]or purposes of [Internal Revenue Code section], fees are 'incurred' when there is a legal obligation to pay them.'"[90] The Walls must honor the obligation to pay

20

reasonable fees incurred.

### *Increase in hourly rates of Attorney Aloe and Attorney Saponara.*

The Walls next object to the increase in the hourly rates of Attorney Aloe and Attorney Saponara. Attorney Aloe's firm began its representation of Altium in June 2017.[91] At that time Attorney Aloe charged an hourly rate of $550 per hour and Attorney Saponara an hourly rate of $300.[92] Those hourly rates remained constant until February 2019 when Attorney Aloe's hourly rate increased to $600 and Attorney Saponara's hourly rate increased to $400.[93]

Kudman Trachten Aloe's June 27, 2017 retainer letter with Altium provides "Partner time is presently billed at $550.00 per hour and associate time varies from $300 to $475 per hour. These hourly rates are subject to increase during the course of our representation, and in such event, the Company will be so notified at least 30 days in advance."[94] The retainer letter contemplates an increase in hourly rates and Altium agreed to these terms.

The Walls object primarily to the increase in Attorney Saponara's thirty-three percent increase in his hourly fees. Attorney Chiacchio swears when he began practicing law at Blank Rome twenty years ago after a one year clerkship with the Supreme Court of Pennsylvania, the firm never increased his rate "by anywhere near 33%."[95] But Altium agreed to an increase in rates in its retainer letter. We approve the increase and deny the Walls' objection to the rate increase.

### *Attorney Betts's failure to attach his engagement letter with Altium.*

The Walls object to Attorney Betts's fees generally because he failed to attach his engagement letter with Altium and there is an inconsistency between his earlier representation to the Court and in the current motion for attorney's fees.[96] The Walls call our attention to Attorney Betts's Declaration filed to support Altium's motion for attorney's fees and costs.[97] In his Declaration before us today, Attorney Betts swears his hourly rate remained $295 throughout his

21

representation of Altium, both at his own firm and when he joined Post & Schell.[98] But in his Declaration filed in opposition to Altium's opposition to the Walls' motion for attorney's fees and costs, Attorney Betts swore his hourly rate as of April 2016, after joining Post & Schell, rose to $350.[99] In other words, a higher hourly rate not presently sought. The Walls highlight this difference, suggesting Attorney Betts may be violating his duty of candor to the Court.

Upon review, there is a discrepancy between Attorney Betts's declarations. Altium did not explain the highlighted discrepancies in its reply brief. A review of Attorney Betts's invoices for services rendered while at Post & Schell show he billed Altium at the lower rate of $295. We do not find the discrepancy, by itself, "undermines" Altium's motion. The Walls do not otherwise object to the reasonableness of Attorney Betts's hourly rate of $295. We will award Altium for time billed by Attorney Betts and $295 per hour and we dismiss the Walls' objection on this basis.

### *The Kudman Trachtman Aloe firm's time billed to advising Altium on bankruptcy.*

The Walls argue Altium's possible bankruptcy "undermines" its motion for attorney's fees. The Walls highlight Attorney Chiacchio's concern, raised after we entered judgment in their favor, of Altium filing for bankruptcy. Attorney Chiacchio swears Attorney Aloe told him Altium "was not considering bankruptcy and that Attorney's Aloe would know if Altium was considering bankruptcy because his firm practices in bankruptcy."[100] And now, the Walls argue, timesheets from Attorney Aloe's firm show his firm "was in fact advising Defendant Altium on bankruptcy."[101]

Our review of the timesheets show one entry, on October 20, 2017, for services by Attorney Saponara described as "Email re: Bill's questions concerning service of post-judgment discovery and bankruptcy options."[102] For this task, Attorney Saponara billed .1 hours which, at an hourly rate of $300, amounts to $30 total.[103] We will strike this time from Altium's fee request.

22

## D. We award Altium reasonable attorney's fees and costs as limited.

Altium seeks a total of $141,326.50 in attorney's fees and $11,883.11 in costs as the prevailing party in this action.[104] As identified and discussed above, the Walls make four arguments to a reduction of Altium's requested attorney's fees and costs. We agree with some of the Walls' objections and, based on our discussion above, grant Altium's motion with the following exclusions: (1) all time billed by Attorney Aloe's firm related to appellate work in the amount of $45,725; (2) all costs related to appellate work in the amount of $10,016.38 ; (3) vague time entries, precluding us from determining the reasonableness of fees, in the amount of $5,275; and (3) Attorney Saponara's .1 hour of work billed to bankruptcy counseling in the amount of $30. Altium's motion seeks an award of $141,326.50 in attorney's fees and $11,883.11 in costs as the prevailing party. Applying the exclusions, the Walls are obligated to pay $90,296.50 in attorney's fees and $1,866.73 in costs.

## III. Conclusion

The Walls signed a complex commercial Master Agreement through which they agreed to pay reasonable attorneys fees incurred by Altium should litigation follow. After extensive litigation, the Walls lost their arguments. They are contractually obligated to pay the reasonable amount of fees and costs. They raise limited objections to Altium's detailed invoices. After careful analysis, we find the Walls are correct on some objections but not others. In the accompanying Order, we enter Judgment in favor of Altium and against the Walls for the reasonable fees and costs of $92,163.23 incurred under the Master Agreement.

---

[1] We provide a full recitation of the background of this case in our April 30, 2019 Memorandum addressing the parties' cross-motions for summary judgment. *See* ECF Doc. No. 157.

[2] ECF Doc. No. 156.

[3] ECF Doc. No. 144 at 4a,§ 8.06 .

[4] *Litton Indus., Inc. v. IMO Indust., Inc.*, 982 A.2d 420, 427 (N.J. 2009) (citing *N. Bergen Rex Transp., Inc. v. Trailor Leasing Co.*, 730 A.2d 843 (Pa. 1999) and quoting *Packard-Bamberger & Co., Inc. v. Collier*, 771 A.2d 1194, 1202 (N.J. 2001)).

[5] *Litton Indus., Inc.*, 982 A.2d at 427-28 (citing *N. Bergen Rex Transp., Inc.*, 730 A.2d at 848).

[6] *Id.* at 428 (citing *N. Bergen Rex Transp., Inc.*, 730 A.2d at 848).

[7] *Id.*

[8] *Id.*

[9] *Id.* at 428-29 (internal citation omitted) (quoting RPC 1.5(a)).

[10] *Id.* at 429 (quoting *Furst v. Einstein Moomjy, Inc.*, 860 A.2d 435, 447 (N.J. 2004)) (internal citation omitted).

[11] *See* ECF Doc. No. 165 at 1, n.1.

[12] *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990).

[13] *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 711 (3d Cir. 2005) (citing *Bell v. United Princeton Prop., Inc.*, 884 F.2d 713, 719 (3d Cir. 1989)).

[14] *Id.*

[15] *Clemens v. N.Y. Cent. Mut. Fire Ins. Co.*, 903 F.3d 396, 400 (3d Cir. 2018) (quoting *Rode v. Dellarciprete,* 892 F.2d 1177, 1183 (3d Cir. 1990)).

[16] *United States ex rel. Palmer v. C&D Technologies, Inc.*, 897 F.3d 128, 139 (3d Cir. 2018) (quoting *Rode*, 892 F.2d at 1183)).

[17] *See* Declaration of Michael J. Betts at ¶ 2 (ECF Doc. No. 160-6).

[18] *Id.*

[19] *Id.*

[20] *Id.* at ¶ 3.

[21] *Id.* at ¶ 4.

[22] *Id.* at ¶ 5; ECF Doc. No. 160-7 at 2.

[23] ECF Doc. No. 160-6 at ¶ 5.

[24] *Id.*

[25] ECF Doc. No. 160-8 at 22.

[26] ECF Doc. No. 160-2 at ¶ 2.

[27] ECF Doc. No. 160-3.

[28] ECF Doc. No. 160-2 at ¶ 2.

[29] *Id.* at ¶ 17.

[30] *Id.* at ¶ 3.

[31] *Id.* at ¶ 5.

[32] *Id.* at ¶¶ 5-9.

[33] *Id.* at ¶¶ 10-11.

[34] *Id.* at ¶ 12.

[35] *Id.* at ¶ 13.

[36] *Id.* at ¶ 15.

[37] *Id.* at ¶ 18.

[38] *Id.* at ¶ 19 (citing ECF Doc. No. 101).

[39] *See* ECF Doc. No. 101.

[40] No. 03-4053, 2009 WL 2342641 (E.D. Pa. July 30, 2009).

[41] *Id.* at *1.

[42] *Id.*

[43] *Id.* at *5.

[44] *Id.*

[45] *Id.* (quoting *Wolgin v. Kennington Ltd., Inc.*, No. 98-5956, 2001 1298996 at *1 (E.D. Pa. Oct. 25, 2001).

[46] *Id.*

[47] *Id.* at *5, n.5 (citing *Planned Parenthood of Cent. NJ v. Attorney Gen. of State of NJ*, 297 F.3d 253, n. 2 (3d Cir.2002) (noting that application for appellate fees was originally submitted to circuit court, then remanded to district court); *Barnes Found. v. Twp. of Lower Merion*, No. 96–372, 2006 WL 2037464, at *2 (E.D.Pa. July 18, 2006) (noting that Court of Appeals had remanded appellate fee application under L.A.R. Misc. 108 for determination by district court); *Whiteland Woods, L.P. v. Twp. of West Whiteland*, No. 96–8086, 2001 WL 936490, at *1 (E.D. Pa. Aug. 14, 2001) (same).

[48] ECF Doc. No. 167 at 2.

[49] *Id.* at 2-3.

[50] *Id.* at 3 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)).

[51] L.A.R. 108.1 (emphasis added).

[52] *Planned Parenthood of Cent. N.J.*, 297 F.3d at 258, 261 n.2.

[53] *Id.* at 261, n.2.

[54] 2006 WL 2037464, at *2.

[55] 2001 WL 936490, at *1.

[56] ECF Doc. No. 165 at 6, nn. 5-6.

[57] The Walls provide us with a spreadsheet listing Altium's invoices for attorney's fees and costs with objections noted under a column labelled "Reason for exclusion." *See* ECF Doc. No. 166. The Walls did not aggregate or otherwise collect their objections into categories to provide us with the total number of hours and associated dollar figures by objected to tasks. This required us to examine a fifty-two page spreadsheet to locate the objection "Third Circuit Appeal-related Fee, excludable per LAR 108.1," identify each entry objected to, and extract the time and hourly rate to determine the total number of hours and associated fees attributed to the challenge. Based on our review of ECF Doc. No. 166, the Walls object to four time entries by Attorney Betts relating to appellate work.

[58] The Walls additionally object to this time entry as "block billing" including appellate work. ECF

Doc. No. 166 at 17. The Court uses the pagination assigned by the CM/ECF docketing system.

[59] The Walls additionally object to this time entry as "block billing" including appellate work. ECF Doc. No. 166 at 17. The Court uses the pagination assigned by the CM/ECF docketing system.

[60] ECF Doc. No. 165 at 6, n.7.

[61] ECF Doc. No. 166 at 3. The Court uses the pagination assigned by the CM/ECF docketing system.

[62] The Walls challenge only Attorney Saponara's fees based on his out-of-state status. They concede Attorney Betts is admitted to the Pennsylvania Bar and this Court. They also concede Attorney Aloe is admitted to the Pennsylvania Bar and this Court shortly after Altium hired him. *See* ECF Doc. No. 165 at 7.

[63] No. 15-474, 2015 WL 4566982 (W.D. Pa. July 29, 2015).

[64] *Id.* at *4.

[65] *Id.*

[66] *Id.* (citing *Winterrowd v. Am. Gen. Annuity Ins. Co.*, 556 F.3d 815, 823 (9th Cir. 2009)).

[67] *Id.*

[68] *Id.* at *4-*5 (quoting *Gsell v. Rubin & Yates, LLC*, 41 F.Supp. 3d 443, 450 (E.D. Pa. 2014)).

[69] *Id.* at *5 (quoting *Gsell*, 41 F. Supp. 3d at 450).

[70] ECF Doc. No. 165 at 10-11. The Walls do not argue the third factor—signing or drafting substantial portions of pleadings, especially the complaint—contending it is inapplicable here because Attorney Aloe's firm only became involved in the case on the appeal and not the initial pleadings.

[71] *See e.g. Gsell*, 41 F.Supp. 3d at 445, 447-48; and *Bilazzo v. Portfolio Recovery Assocs.*, 876 F.Supp. 2d 452 (D.N.J. 2012).

[72] *See Winterrowd*, 556 F.3d at 823-24; *Navarro v. Monarch Recovery Mgmt., Inc.*, No. 13-3594, 2014 WL 2805244, at *6 (E.D. Pa. June 20, 2014); *Moore v. Midland Credit Mgmt., Inc.*, No. 12-166, 2012 WL 6217597, at *9-10 (N.D. Ind. Dec. 12, 2012); *Lentz v. City of Cleveland*, No. 04-669, 2011 WL 5360141, at *11 (N.D. Ohio Nov. 7, 2011).

[73] ECF Doc. No. 167 at 6.

[74] *Bilazzo*, 876 F.Supp. 2d at 464-65.

[75] *Id.* at 465.

[76] *Id.* at 468. Ultimately, the district court allowed some fees by out-of-state attorneys, reducing the total fees by a flat fifteen percent of the lodestar and by the fee counsel would have been required to pay under local rule for *pro hac vice* admission. *Id.*

[77] ECF Doc. No. 165 at 12.

[78] ECF Doc. No. 166 at 17-24, 33, 37, 41, 51. Again, we were required to review the Walls' fifty-two page spreadsheet to identify to time based on a "vague, no description of specific work performed" objection, identify each entry objected to, and extract the time and hourly rate to determine the total number of hours and associated fees attributed to the challenge. And the Walls unnecessarily complicated this exercise by objecting to time entries even where the Kudman Trachten Aloe firm did not bill time, noting "No Charge."

[79] Attorney Aloe billed at an hourly rate of $550 per hour. In February 2019, Attorney Aloe's hourly rate increased to $600 per hour. *See* Declaration of Paul Aloe at ¶ 3 (ECF Doc. No. 160-2).

[80] Attorney Aloe's Declaration in support of Altium's motion for attorney's fees and costs does not identify "ESC." *See* ECF Doc. No. 160-2.

[81] "ESC" had a hourly rate of $425 per hour on January 14, 2019.

[82] In addition to an objection for a vague description, the Walls object to this work because it is the "first time this attorney is invoicing on this matter, only one hour in entire representation in which he is billed, high rate" (ECF Doc. No. 166 at 41).

[83] We will allow time entered on July 25, 2017; October 25, 2017; and January 14, 2019 by "ESC" amounting to a total of $810.

[84] *See* Declaration of Thomas H. Chiacchio, Jr. at ¶ 7 (ECF Doc. No. 165-4).

[85] *Id.*

[86] ECF Doc. No. 118 at ¶ 9.

[87] Declaration of Paul H. Aloe at ¶ 17 (ECF Doc. No. 160-2) and Declaration of Michael J. Betts at ¶ 5 (ECF Doc. No. 160-6).

[88] *Kernahan v. Home Warranty Adm'r of Florida, Inc.*, 199 A.3d 766, 777 (N.J. 2019) (citing *Roach v. BM Motoring, LLC*, 155 A.3d 985, 991 (N.J. 2017)).

[89] *Estate of Palumbo v. United States*, 675 F.3d 234, 239 (3d Cir. 2012) (citing BLACK'S LAW DICTIONARY at 836 (9th ed. 2009)) (determining estate's motion for attorney's fees and costs under Internal Revenue Code). Section 7430 of the Internal Revenue Code allows an award of

"reasonable administrative costs incurred in connection with such administrative proceeding within the Internal Revenue Service" and "reasonable litigation costs incurred in connection with such court proceeding." 26 U.S.C. § 7430(a)(1), (2).

[90] *Estate of Palumbo*, 675 F.3d at 240-41 (quoting *Young v. Comm'r of Internal Revenue*, T.C.M. 2006-189, 2006 WL 2564109, at *9 (Sept. 6, 2006)).

[91] Declaration of Paul H. Aloe at ¶ 2 (ECF Doc. No. 160-2).

[92] *Id.* at ¶ 3.

[93] *Id.*

[94] ECF Doc. No. 160-3 at 3. The Court uses the pagination assigned by the CM/ECF docketing system.

[95] Declaration of Thomas H. Chiacchio, Jr. at ¶¶ 3,4, 8 (ECF Doc. No. 165-4).

[96] ECF Doc. No. 165 at 13-14.

[97] *See* ECF Doc. No. 160-6.

[98] *Id.* at ¶ 2.

[99] *See* ECF Doc. No. 105-3 at ¶¶ 5-6.

[100] ECF Doc. No. 165-4 at ¶ 10.

[101] ECF Doc. No. 165 at 14-15.

[102] ECF Doc. No. 160-4 at 11.

[103] On their spreadsheet noting their objections to Altium's fees, the Walls object to this time entry because Attorney Saponara is not admitted to practice in Pennsylvania or this Court. ECF Doc. No. 166 at 23. As discussed above, we deny an objection based Attorney Saponara's admission status here.

[104] ECF Doc. No. 160.